389 Pa. Superior Ct. 86 (1989)
566 A.2d 857
P.G. PUBLISHING COMPANY D/B/A Pittsburgh Post Gazette, Appellant at No. 967,
v.
COMMONWEALTH of Pennsylvania acting By and Through the DISTRICT ATTORNEY OF ERIE COUNTY.
COMMONWEALTH of Pennsylvania
v.
David C. COPENHEFER.
Appeal of COMMONWEALTH of Pennsylvania (at No. 1083).
Supreme Court of Pennsylvania.
Submitted October 12, 1988.
Filed September 27, 1989.
Reargument Denied December 7, 1989.
*88 Thomas W. McGough, Jr., Pittsburgh, for P.G. Publishing, appellant (at 967) and appellee (at 1083).
William R. Cunningham, Dist. Atty., for Com., appellant, (at 1083) and appellee (at 967).
Before BROSKY, JOHNSON and MELINSON, JJ.
JOHNSON, Judge:
Both the Pittsburgh Post-Gazette Publishing Company and the Commonwealth of Pennsylvania, acting through the person of the District Attorney of Erie County, have appealed from certain aspects of an order entered by the Honorable Roger M. Fischer of the Court of Common Pleas of Erie County. In this case the Pennsylvania State Police had secured four search warrants in connection with a kidnapping that ended in a savage murder. During the course of the ongoing investigation, before any murder charge had been filed, the Post-Gazette sought access to the warrants and the probable cause affidavits supporting the warrants. After a hearing at which the Commonwealth had the burden of proving why access should be denied the paper, the trial court granted access to the newspaper but at the same time stayed access to allow the Commonwealth to appeal. We conclude, in light of Commonwealth v. Fenstermaker, 515 Pa. 501, 530 A.2d 414 (1987), that the trial court was required to apply a balancing test weighing the paper's right of access against the governmental interest in the integrity of its ongoing investigation. Finding that such a test was not applied, we vacate and remand.
*89 Thirty-seven year old Sally Weiner was kidnapped from a church parking lot in Corry, Pennsylvania, early on the afternoon of June 17, 1988. PennBank branch manager Harry Weiner, her husband, received a telephone call later that day at the bank that sounded like a tape recording of his wife. Mrs. Weiner stated that she had been kidnapped, that her life was in danger and that her husband should follow the directions provided by the kidnappers to retrieve a bag from beneath a car in the parking lot outside the bank. A ransom note inside the bag directed Mr. Weiner to fill the bag with money, pick up portable radio equipment from a nearby Radio Shack store and drive to a location some ten miles out of town to await further instructions. Mr. Weiner attempted to comply with the demands but no further instructions were received by him. Early on Sunday morning, June 19, 1988, a farmer found Mrs. Weiner's body in a wooded area of his property. Mrs. Weiner had been killed by a single gunshot wound to the back of the head. On June 20, 1988, David C. Copenhefer was charged by the Pennsylvania State Police with one count each of Kidnapping, Attempted Robbery and Attempted Extortion arising from the kidnapping and the death of Mrs. Weiner. Subsequently, Copenhefer was charged with Mrs. Weiner's murder.
During the investigation, the police obtained four search warrants from District Justice Patsy Nichols. After Copenhefer had been charged with the above crimes, but before he was charged with the murder, the Pittsburgh Post-Gazette sought access to the probable cause affidavits supporting the search warrants. On June 28, 1988 the newspaper filed a Motion to Intervene after the District Justice and the District Attorney denied access to these documents. On the same date, the Commonwealth filed a Petition to Seal the affidavits.
As of June 29, 1988, the date of the trial court's hearing on the Petition to Seal, neither Copenhefer nor anyone else had been arrested for the unsolved homicide which was the focus of a major ongoing criminal investigation by state and *90 local police and the Federal Bureau of Investigation. After the hearing, the trial court denied the Commonwealth's Petition to Seal and granted the Post-Gazette's Motion to Intervene as well as the newspaper's request to inspect and copy the search warrants and supporting affidavits. The court, however, stayed its order pending appeal by the Commonwealth. This timely appeal by both parties followed. The Post-Gazette also filed an Application for Partial Supersedeas or To Vacate the Stay Pending Appeal. On July 12, 1988, we refused to vacate the stay prior to the consideration of this appeal on the merits.
Although no party to the proceeding has questioned issues of jurisdiction or appealability, we determine sua sponte that this appeal is properly before us. Jay Dee Department Store, Inc. v. South Penn Gas Co., 362 Pa.Super. 404, 524 A.2d 940 (1987); Wertz v. Anderson, 352 Pa.Super. 572, 508 A.2d 1218 (1986). Orders which are separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost, are considered final orders. See Pugar v. Greco, 483 Pa. 68, 394 A.2d 542 (1978) quoting Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We conclude that this order is appealable under the "collateral order" exception to the final judgment rule and we address the issues raised in this appeal on the merits.
Appellate review of a trial court's decision in this case requires that we determine whether the trial court abused its discretion since the determination regarding access to warrants and their supporting affidavits is within the trial court's discretion. Fenstermaker, 515 Pa. at 513, 530 A.2d at 420. An abuse of discretion is not merely an error of judgment, but is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record. Commonwealth *91 v. Kubiac, 379 Pa.Super. 402, 550 A.2d 219 (1988).
Both the Commonwealth and the Post-Gazette challenge the extent of the newspaper's right of access to the search warrants and supporting affidavits which were issued during the investigation of this homicide. The Commonwealth poses three questions:
I. Whether a search warrant is a public document prior to the time a magistrate must file same with the clerk of record?
II. Whether there is a public right of access to search warrants?
III. Whether the lower court erred in denying the Commonwealth's request to seal the record?
The Post-Gazette asks that we consider two questions:
I. Did the Post-Gazette properly establish its right to inspect and copy search warrants and supporting affidavits relating to a criminal prosecution?
II. Did the trial court properly stay the effect of its order pending the outcome of the appeal on the merits?
The Commonwealth contends that the Pennsylvania Supreme Court determination in Commonwealth v. Fenstermaker, supra, holding that the public and the press have a presumptive right of access to arrest warrants and their supporting affidavits, should not be extended to search warrants and their supporting affidavits. The Commonwealth maintains that the nature, the purposes and the consequences of search warrants differ from those same attributes of arrest warrants. For the purposes of this analysis, we will assume that the search warrants and supporting affidavits are public documents and we will therefore not address the Commonwealth's assertion that, pursuant to the Rules of Criminal Procedure, search warrants and their supporting affidavits do not have to be filed with the Clerk of the Court of Common Pleas prior to preliminary hearings and do not become public documents *92 once filed with the magistrate. We emphasize that the trial court's determination that these documents are public records does not resolve the primary issue, whether a newspaper has a right to inspect and copy search warrants and supporting affidavits while a homicide investigation is in progress. We have not considered and take no position on a right of access which may arise upon the completion of any such investigation.
In Commonwealth v. Fenstermaker, supra, our supreme court addressed the extent a newspaper would be afforded access to arrest warrant affidavits in connection with serious criminal charges, including homicide, following the conclusion of an investigation and after arrest. Justice Flaherty's majority opinion emphasized that there had been no assertion in Fenstermaker that warrant affidavits "should be open to public inspection prior to an actual arrest having been made." 515 Pa. at 505, 530 A.2d at 416. Justice Flaherty also observed that Fenstermaker "concerns only access to affidavits supporting arrest warrants that have already been executed." Id.
Fenstermaker is factually and legally inapposite to the present case. Access to search warrant affidavits while a major homicide investigation is in progress is an entirely different situation from access to arrest warrant affidavits after an arrest has been made and the investigation has been completed. Justice Flaherty clearly indicated that Fenstermaker was to be applied only following the conclusion of an investigation and after arrest. See 515 Pa. at 505, 530 A.2d at 416. Thus, we decline to extend the scope of the Pennsylvania Supreme Court decision in Fenstermaker to the situation where a search warrant is sought by the press during an ongoing criminal investigation.
While we acknowledge a common law right to inspect judicial documents, we emphasize that such right is not absolute. Fenstermaker, 515 Pa. at 512, 530 A.2d at 420; Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 580 (1975). It is the responsibility of the trial court to determine, in the *93 exercise of its informed discretion, whether the common law right of access will outweigh countervailing factors. Id. Certainly the trial court may be best situated to gauge the vulnerability of an ongoing criminal investigation. In the present case the basic governmental function of apprehending a criminal presented a strong countervailing factor that the trial court should have weighed against the newspaper's right of access. The United States Supreme Court has recognized that, while many functions of government will best operate under public scrutiny, other government functions would be frustrated if conducted openly, for example, the grand jury system. See Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8-9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10 (1986).
In Commonwealth v. Hayes, 489 Pa. 419, 414 A.2d 318 (1980), the Pennsylvania Supreme Court stated that the right of access to court proceedings is limited for several reasons, including the defendant's right to a fair trial and "the needs of government to obtain just convictions and to preserve the confidentiality of sensitive information and the identity of informants." 489 Pa. at 425, 414 A.2d at 321 quoting Gannett v. De Pasquale 443 U.S. 368, 398, 99 S.Ct. 2898, 2915, 61 L.Ed.2d 608, 633 (1979). Thus, in this and similar situations, the trial court, along with the other relevant factors, is required to weigh and balance the presumption that information received by it is to be open to the public against the need for the Commonwealth to keep confidential that information the disclosure of which will jeopardize ongoing criminal investigations. See, for example, Commonwealth v. Miller, 513 Pa. 118, 131, 518 A.2d 1187, 1195 (1986) (protecting the identity of a confidential informant).
Therefore, we conclude that the determination regarding access to search warrants and supporting affidavits requires a balancing of interests by the trial court. The Fenstermaker court held:
Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting *94 closure of the document to public inspection, access to the document may be denied.
Fenstermaker, 515 Pa. at 513, 530 A.2d at 420 (emphasis added). As Judge Weis, in his concurring opinion in United States v. Criden, 648 F.2d 814 (3d.Cir. 1981), states, "[i]n determining whether records should be available for copying, the court must weigh `the interests advanced by the parties in the light of the public interest and the duty of the courts.'" 648 F.2d at 830. Thus, in our review of the discretion exercised and articulated by the trial court, we must determine both the relevance and the weight of the factors the trial court considered and whether these factors were given appropriate balance.
It follows that, when relying on discretionary power, a trial court:
[S]hould place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.
Rosenberg, Judicial Discretion of the Trial Court: Viewed from Above, 22 Syracuse L.Rev. 635, 665-66, (1971); see also Fenstermaker, 515 Pa. at 514, 530 A.2d at 421; Commonwealth v. Buehl, 316 Pa.Super. 215, 226, 462 A.2d 1316, 1322 (1983). To allow meaningful appellate review, it is necessary for the trial court to provide detailed and articulated reasons upon which the exercise of its discretion was based.
In the present case, disclosure of the warrants and the affidavits were requested by the Post-Gazette during an ongoing murder investigation. At the hearing, Sergeant Patrick W. McHenry of the Pennsylvania State Police testified as follows:
Q. Have you been assigned to the investigation of the kidnapping and death of Sally Weiner?
A. Yes, I'm in charge of the major case there, in troop B.

*95 Q. Are you the lead investigator in that investigation?
A. No, I'm a supervisor. The lead investigator would be Trooper Carl Buckshaw.
Q. Now has the investigation revealed that Sally Weiner died?
A. Yes, it has.
Q. As a result of your investigation, has anyone been arrested for that death?
A. Not for the death, no sir.
Q. Has there been an arrest?
A. Yes, sir, there has been.
Q. And what arrest was there, sergeant?
A. For kidnapping; Mr. David Copenhofer.
Q. Was Mr. Copenhofer charged with the homicide of Sally Weiner?
A. No, sir, he was not.
Q. To date has anyone been charged with the homicide?
A. No, sir.
Q. Now, I said homicide, are you treating it as a homicide?
A. Yes, we are.
Q. So, there is an active homicide investigation into the death of Sally Weiner?
A. Yes, sir, there is.
Q. As part of that investigation, have you made an appeal to the public for information?
A. Yes, sir, we have.
Q. As part of that investigation, have you made a determination as to whether the death of Sally Weiner was caused by one or more individuals?
A. We haven't made a definitive conclusion yet. We believe that more than one individual committed the murder.
N.T. 6/29/88 at 23-25. On cross-examination, Sergeant McHenry testified that "[c]ounting the FBI, we probably *96 have seventy-some investigators" involved. N.T. 6/29/88 at 25-26. It is clear from this unrefuted testimony that the investigation of Mrs. Weiner's homicide was in full swing at the time the Motion to Intervene by the newspaper was filed and heard. As the Commonwealth observed in its closing remarks:
We also have the testimony of Sergeant McHenry that possibly more than one person is involved in the investigation. So, it is likely that there is someone at large who has a history of being armed and dangerous and who represents a real threat to this community. . . . This investigation is also seeking public information, help from the public. And to release this information in search warrants or otherwise would taint the information which was received from the public. Because you don't know as an investigative matter where people see these things, in the paper or as a result of search warrants. It taints the evidence that you receive from them, it interferes with the ability to gather information from the public. . . . We can't consider that public right to access, your Honor, in a vacuum . . . The public has an interest and a right in capturing this individual who committed this homicide. The public has a right to be safe in their community and in their homes. And at this point, based on the lack of an arrest for the homicide, we cannot say they are safe.
N.T. 6/29/88 at 43-44 (emphasis added).
Following the June 29, 1988 hearing, the trial court found these search warrants and affidavits to be public records and denied the Commonwealth's request to seal the documents for failure of proof. However, at the same time the trial court stayed its order and sealed the documents to forbid access pending appeal. While, by both granting access and yet staying access pending appeal, the trial court appeared to be sensitive to the interests of both sides, the court still did not articulate a balancing analysis.
We are aware that a trial court is under the disadvantage of often having to make rapid-fire rulings in areas of law where there is little guidance and few fixed principles, as in *97 the present case. We need not quarrel with Judge Fisher's holding that the search warrants and probable cause affidavits are public records. However, the order entered on June 30, 1988 by the trial court was devoid of articulated findings of fact which would allow us to determine whether the trial court's conclusion regarding the newspaper's access to these documents is adequately supported by the particular facts which were before it. When the release of documents will seriously jeopardize an ongoing investigation by the police, the documents or the proceedings may be sealed from public access until the conclusion of the investigation and after arrest. In the present case, the trial court determined that the search warrants and the supporting affidavits were public records to which the newspaper had access but did not thereafter articulate its balancing of the competing interests: the newspaper's right of access weighed against the compelling governmental function of effective law enforcement.
Though the trial court committed an error of law by failing to demonstrably balance the governmental interest against the newspaper's right of access, it avoided harm by imposing a stay pending appeal. Accordingly, we vacate that portion of the order which allowed the newspaper access to the search warrants and supporting affidavits during an ongoing investigation and remand for proceedings consistent with this opinion.
Order vacated and remanded. Jurisdiction relinquished.
MELINSON, J. files a dissenting opinion.
MELINSON, Judge, dissenting.
I respectfully dissent.
First, while I agree with the majority that a trial court must balance the competing rights in matters of public access to judicial proceedings and state its findings for the record, I think it is incorrect for the majority to "assume that the search warrants and supporting affidavits are *98 public documents" for purposes of its analysis. This approach sweeps aside the seminal issue of these cases.
The threshold inquiry "in a case such as this where a common law right of access is asserted is whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents.
Commonwealth v. Fenstermaker, 515 Pa. 501, 508, 530 A.2d 414, 418 (1987).[1]
As our Supreme Court recognized in Fenstermaker, there exists in this Commonwealth a "common law right to inspect public documents," including public judicial documents. Id., 515 Pa. at 510, 530 A.2d at 419 (emphasis added). See also Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); United States v. Criden, 648 F.2d 814 (3d Cir. 1981). Implicit in this, though not actually stated in Fenstermaker, is the presumption that non-public documents are not available for public inspection. Fenstermaker cites examples of judicial documents that do not constitute public judicial documents: transcripts of bench conferences held in camera and working notes maintained by the prosecutor and defense counsel at trial. Fenstermaker, 515 Pa. at 508, 530 A.2d at 418. If this court were to determine that search warrants or their affidavits are not public judicial documents, the need for a balancing test of the competing rights would be obviated. The public would not have a presumptive right to access. For the reasons that the Court in Fenstermaker found arrest warrant affidavits to be public judicial documents, however, it is clear that search warrants and their affidavits are also public judicial documents.
Like the arrest warrant affidavits discussed in Fenstermaker, search warrants and their affidavits are filed with magistrates and thus constitute "judicial" documents. Fenstermaker, 515 Pa. at 508-509, 530 A.2d at 418. See *99 Pa.R.Crim.P. 2002A(a) ("The District Attorney of any county may require that search warrant applications filed in the county have the approval of an attorney for the Commonwealth prior to filing."); Pa.R.Crim.P. 2010 ("The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory [of the items seized pursuant to the search warrant] with the clerk of the Court of Common Pleas of the judicial district in which the property was seized."), and Pa.R. Crim.P. 146(b) ("The issuing authority shall transmit the transcript [of the proceedings of a defendant held over for trial] to the clerk of the proper court. . . . In addition to the transcript[,] the issuing authority shall also transmit . . . (3) all affidavits filed in the proceeding. . . ."). See Fenstermaker, 515 Pa. at 509, 530 A.2d at 418, regarding the Supreme Court's construction of similar rules of criminal procedure applicable to arrest warrant affidavits.
In Fenstermaker, the Court rested its determination that arrest warrant affidavits are public judicial documents primarily upon two major considerations with additional support from other factors. These primary considerations are certain public policy concerns and the fact that the affidavits are filed as judicial documents. I quote the policy concerns articulated in Fenstermaker at length:
Specifically, from a policy standpoint, public inspection of arrest warrant affidavits would serve to discourage perjury in such affidavits, would enhance the performance of police and prosecutors by encouraging them to establish sufficient cause before an affidavit is filed, would act as a public check on discretion of issuing authorities thus discouraging erroneous decisions and decisions based on partiality, and would promote a public perception of fairness in the arrest warrant process. Indeed, the salutary effects of openness in this aspect of the criminal justice system are clear, and, as noted in Richmond Newspapers, Inc. v. Virginia, 448 U.S. [555] at 572, 100 S.Ct. [2814] at 2825, 65 L.Ed.2d [973] at 986 [(1980)], "People in an open society do not demand infallibility from their *100 institutions, but it is difficult for them to accept what they are prohibited from observing."
515 Pa. at 507-508, 530 A.2d at 418.
It requires no lengthy analysis to conclude that the policy considerations which the Fenstermaker Court found so persuasive in reaching its result have equal application to the issue of whether search warrants and their affidavits are public judicial documents. Indeed, one may without hesitation insert "search warrants and their affidavits" for "arrest warrant affidavits" in the above passage. On the basis of the well-considered analysis of Fenstermaker, and finding that search warrants and their affidavits are filed judicial documents clothed with the identical policy concerns discussed in Fenstermaker, I would hold that search warrants and their affidavits are public judicial documents presumptively open to the public.[2]
Of course, this holding does not conclude the matter. As the majority correctly and very ably stated, the public right of access may be limited, delayed, or denied, when appropriate, if outweighed by other competing rights and public interests, including the endangerment of an ongoing police investigation. (See cases cited in the majority's opinion.) I am constrained to dissent, however, because the majority's directive to the lower court to balance the competing interests in this case is unnecessary and hints of an invasion of the fact-finding function of that court.
Very simply, the trial court's opinion demonstrates that the court was aware that its duty was to consider and balance the competing interests and that the court indeed did so:

*101 As Justice Flaherty stated in Fenstermaker, numerous factors may enter into the Court's consideration of whether or not the moving party has met its burden to overcome the presumption that the warrants are public records. These factors may include, inter alia, a showing that the Sixth Amendment fair trial rights of the Defendant would be adversely affected by disclosure, that there is a need to protect informants, that the necessity of preserving the integrity of ongoing criminal investigations is paramount, or that there are no reasonably alternative methods available to protect the interests which would be threatened by disclosure.
We find nothing in the record to substantiate any of the four reasons given by the Commonwealth in its Petition to Seal. "It is inconsistent to permit the sealing of such affidavits upon the mere request of the District Attorney." Fenstermaker [530 A.2d] at page 420 [sic]. Here, the Commonwealth has proven only that there is an ongoing investigation, but there is no evidence that the homicide investigation would in any way be hampered, prejudiced or compromised by release of the search warrants and affidavits. There is also no evidence that the Defendant or the public would be harmed in any way by such disclosure.
Trial court opinion at p. 7.
From my reading of these passages, it is incorrect for the majority to state that the trial court "did not . . . articulate its balancing of the competing interests." To remand to the trial court with the directive that it consider these interests and articulate its findings when it had already done so is not only unnecessary, but also an impermissible intrusion into the trial court's fact-finding domain. This is so because the majority leaves the trial court with more than a suggestion that it considers that the balance, in this instance where a police investigation is ongoing, should be tipped the other way. This, I believe, is a factual determination to be made by the trial court, and absent an abuse of discretion, such a determination should stand. See Delahanty v. First Pennsylvania *102 Bank, N.A., 318 Pa.Super. 90, 464 A.2d 1243 (1983) (It is not the province of the appellate court to find facts or substitute its judgment for that of the trial judge), and Tyler v. King, 344 Pa.Super. 78, 496 A.2d 16 (1985), appeal denied July 1, 1986 (Superior Court may disregard or overrule trial court's determinations of credibility and weight of the evidence only in clear cases and when the Court finds that those determinations were manifestly erroneous, arbitrary, and capricious or flagrantly contrary to the evidence).
Further, like the issue regarding the public nature of search warrants and their affidavits, the majority failed to entertain any consideration of the Post-Gazette's second question on appeal, namely, "Did the trial court properly stay the effect of its order pending the outcome of the appeal on the merits?" This issue concerns not the newspaper's right of access, but the newspaper's timely right of access.
The Post-Gazette makes a compelling point, I believe, when it questions the appropriateness of the trial court's stay, which would effectively deny public access pending appeal, when the trial court made a finding that public access would not hamper, prejudice, or compromise the police investigation or harm the defendant or the public in any way based upon the evidence submitted at trial. A stay is warranted under Pa.R.A.P. 1732 if the following criteria are met: (1) the petitioner makes a strong showing that he is likely to prevail on the merits; (2) the petitioner has shown that without the requested relief, he will suffer irreparable injury; (3) the issuance of a stay will not substantially harm the other interested parties in the proceedings, and (4) the issuance of the stay will not adversely affect the public interest. Township of Chartiers v. William H. Martin, Inc., 518 Pa. 181, 542 A.2d 985 (1988); Pennsylvania Public Utility Commission v. Process Gas Consumers Group, 502 Pa. 545, 467 A.2d 805 (1983). The trial court's findings that public access would not harm the interests of the Commonwealth is at odds with the second *103 criterion of this test. On balance, however, is the fact that the trial court was faced in this instance with the uncertainties of a potentially far-reaching case of first impression.[3] Because of that circumstance, I do not believe that the learned trial judge abused his discretion in taking a more cautious approach.
For the foregoing reasons, I would affirm the order of the trial court.
NOTES
[1] It is even more curious that the majority overlooked this issue when it was presented as the first question on appeal by the Commonwealth.
[2] I also note that search warrants and their affidavits have been held to be public judicial documents in other jurisdictions. See Cowles Publishing Company v. Murphy, 96 Wash.2d 584, 637 P.2d 966 (1981) (recognizing a common-law right of access to judicial records in the form of search warrants, affidavits of probable cause, and inventory lists), and In re Search Warrant for Second Floor Bedroom, 489 F.Supp. 207 (D.C. Rhode Island 1980) (documents filed with the court, including affidavits of probable cause for search warrants, are public records available for inspection).
[3] The majority carefully distinguishes the circumstances in this case, involving the issue of access to search warrants and their affidavits while a police investigation is under way, from those before the Fenstermaker court, involving the issue of access to an affidavit of probable cause for arrest following the arrest.