803 P.2d 676

**STATE of New Mexico,**
**Plaintiff–Appellant,**

v.

**Thomas L. FERGUSON,**
**Defendant–Appellee.**

No. 11525.

Court of Appeals of New Mexico.

Oct. 30, 1990.

Certiorari Denied Dec. 5, 1990.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Gary D. Alsup, Alsup Law Office, Clayton, for defendant-appellee.

## OPINION

MINZNER, Judge.

The state appeals the trial court's granting of defendant's motion for a new trial. The state raises one issue on appeal: whether the trial court abused its discretion in granting a new trial because the comments made by the prosecutor during closing argument did not constitute legal error. We affirm.

FACTS

Defendant was charged with an open count of murder for killing his wife's lover after finding his wife and the victim in bed at defendant's home. Defendant testified that he hit his wife with the butt of a revolver and that it accidentally went off and caused the victim's death. The state's theory at trial was that the shooting could not have been accidental, given the location of the powder burns and the wound on defendant's wife's face and head. The state contended that defendant had been suspicious of his wife and murdered the victim when his suspicions were confirmed.

During the trial, evidence was admitted that defendant possessed several loaded guns. In closing argument, the prosecutor remarked that the guns showed a kind of paranoia. Defense counsel objected and the objection was sustained. In his final summation, the prosecutor stated that he thought that the jury should return a guilty verdict. Defense counsel objected and moved for a mistrial. The judge sustained the objection but denied the mistrial and warned the prosecutor. The jury returned a verdict for second degree murder. Defendant moved for a mistrial on several grounds. The trial court granted defendant's motion for a new trial based on two improper remarks made by the prosecutor in closing argument.

DISCUSSION

The trial court is invested with broad discretion in granting or denying a motion for a new trial, and its decision will be reversed only upon a showing of clear and manifest abuse of that discretion. *State v. Gonzales,* 105 N.M. 238, 731 P.2d 381 (Ct.App.1986). In reviewing whether a trial court abused its discretion in granting or denying a defendant's request for a new trial, the appellate court employs a two-part test. *Id.* First, the court determines whether the grant of a new trial is based on legal error. Second, the court examines whether the error is substantial enough to warrant the exercise of the trial court's discretion. *Id.*

We recognize that while the standard of appellate review governing rulings entrusted to the trial court's discretion is deferential, it does not require us to affirm. Trial courts are given discretion in a number of areas, and the scope of our review depends in part on the particular nature of

the question the trial court was called upon to answer.

In this case, *Gonzales* has provided a starting point for analysis. However, we think it is important to add to its teachings the principle that adequate appellate review often depends on sufficient indication in the record of the reasons underlying a discretionary ruling.

> Review-limiting discretion in its stronger forms confers upon the trial judge unusual power with regard to many issues and, as a corollary, grave responsibility. He becomes a court of last resort on these issues, not because appellate machinery is lacking, but because the matters are not susceptible to firm legal rules and because the trial judge is thought to be in a better position than appellate judges to decide the matters wisely and justly.
>
> Of course, a trial judge wielding such extraordinary power is bound to play fair with the system. He would be false in his duty if he were to try to camouflage his rulings or to shield them from normal review by "dropping an 'iron curtain'" of discretion over them. Thus, he may not order a new trial in the purported exercise of discretion in a general way when his true ground is an arguable belief that the jury misapplied the law or rendered a verdict he disapproves of for some private reason.
>
> To play fair, a trial judge relying upon discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision. If the appellate court concludes that he considered inappropriate factors or that the range of his discretionary authority should be partially fenced by legal bounds, it will be in a position to do this intelligently.

M. Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L.Rev. 635, 665–66 (1971) (footnote omitted).

In this case, the trial court's order granting a new trial lists the grounds on which the court relied. When the order is read in light of the court's oral remarks at the time the motion was heard, it is clear enough why the court ruled as it did. Thus, we believe the record is sufficient to permit us to review and affirm.

This does not mean to suggest that it would be reversible error in every case to fail to provide a record of the reasons. In some cases, the reasons in favor of the ruling may be so strong and so apparent from the evidence or argument that the trial court does not have to specifically articulate them. In other cases, where the reasons may not be so strong or so apparent, but where it is evident that there existed reasons for and reasons against the ruling, we may indulge in the usual appellate presumptions. *See State ex rel. Alfred v. Anderson*, 87 N.M. 106, 529 P.2d 1227 (1974) (upon a doubtful or deficient record, we indulge in every presumption in favor of the correctness of the judgment; every reasonable intendment and presumption are resolved in favor of the proceedings and judgment in the court below); *accord State v. Garcia*, 98 N.M. 186, 646 P.2d 1250 (Ct.App.1982) (trial court is upheld if right for any reason); *see Alexander Film Co. v. Pierce*, 46 N.M. 110, 121 P.2d 940 (1942) (where the trial court did not state a reason, ruling should not be reversed if correct upon any proper theory); *see also State v. Beachum*, 83 N.M. 526, 494 P.2d 188 (Ct.App.1972).

In his brief, defendant argues that other comments made by the prosecutor during his closing argument were prejudicial, and thus supported the trial court's granting of a new trial; however, the court stated in its order that only two comments were the basis on which a new trial was granted. Thus, we discuss only these two comments. We first address the question of whether each one involved legal error. Then we discuss the question of whether the error that occurred was substantial.

## PARANOIA REMARK

Initially we note that the parties disagree about the exact reference made

194

by the prosecutor. The state contends the prosecutor stated as follows: "... twenty-one guns, and half of them are loaded, it may represent a kind of a paranoia in *a* person * * *." (Emphasis added.) In contrast, defendant quotes the remark in the following manner: "But if you have twenty-one guns and one-half of them are loaded it may represent a kind of paranoia in *this* person." (Emphasis added.) After our review of the applicable tape, we conclude the state's version is probably correct, although the word in question was spoken softly and is not perfectly clear. It is clear, however, that the comment made differs from the comment reproduced in the trial court's order. The trial court lists the prosecutor's comment as follows: "shows to me a paranoia—a paranoid man." In our view, the difference between the state's version and the comment reproduced by the trial court is irrelevant.

█ It is improper for a prosecutor to refer to or argue on the basis of facts outside the record. *See* I American Bar Association, *Standards for Criminal Justice* Standard 3–5.9 (2d ed. 1980) (ABA). It is also improper for a prosecutor to mislead the jury as to the inferences warranted by the evidence, *id.*, Standard 3–5.8(a), or to comment on the character of the accused until the defendant has placed his or her character in issue. *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983). In this case, the trial court was entitled to conclude that the comment was an argument not supported by facts of record or legitimate inferences from facts of record. Alternatively, the trial court was entitled to conclude that the comment was an impermissible comment on defendant's character.

The state argues that the statement was a proper comment on the evidence because defendant's suspicion about his wife's behavior was a key element in the case. The state contends that the prosecutor did not make a comment about defendant's character; instead, the state argues that the prosecutor only suggested a possible explanation for the large number of loaded guns in defendant's possession. At oral argument,

the state contended that the prosecutor in effect described defendant as "suspicious."

We note, however, that there was other evidence to support an inference that defendant was suspicious of his wife's activities, yet the prosecutor's paranoia remark relied on defendant's possession of loaded guns. The trial court could have thought the specific reference was intended to make a different point. Further, the parties agree and the record shows that the word "paranoia" was used, which the trial court certainly believed was not selected as a synonym. Under these circumstances, the trial court was entitled to conclude that the paranoia remark was legal error within the meaning of *Gonzales.*

"Paranoia" is a specific psychological term that refers to a certain personality type. Here, defendant's mental state was not at issue. Further, there was no evidence that possession of loaded guns indicates paranoia, and we are not persuaded by the state's argument that the presence of paranoia on these facts can be said to be a matter of "common public knowledge based on ordinary human experience." ABA, *supra*, Standard 3–5.9.

We agree with the state that the trial court might have concluded that the remark would have been understood as a synonym for "jealous" or "suspicious." We assume, but need not decide, that it would have been proper to argue that possession of the loaded guns was evidence of a suspicious or jealous nature. However, when the trial court might have decided either way on a question entrusted to its discretion, we will affirm the decision reached by the trial court.

OPINION REMARK

█ A prosecutor is prohibited from expressing his or her personal view concerning the defendant's guilt. *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974); *see also* ABA, *supra*, Standard 3–5.8(b); SCRA 1986, 16–304(E) (Repl.1988). The prohibition does not prevent a prosecutor from stating his opinion based on the evidence. *See Swope v. State*, 263 Ind. 148, 155, 325 N.E.2d 193, 196, *cert. denied*, 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100

(1975). In *Swope*, the court stated that the comment " '[w]e trust that you will do what is right. We, of course, are close to the situation and we're just so convinced this defendant is guilty' " would have been reversible error if the prosecutor had not concluded that "[t]he evidence presented here is so convincing." *Id.*

A good summary of the relevant law can be found in F. Lee Bailey's test—F. Bailey & H. Rothblatt, *Successful Techniques for Criminal Trials* Section 25:16, at 565–66 (2d ed. 1985):

> The right of a prosecuting attorney to draw in his argument all legitimate inferences from the evidence authorizes him to assert a belief based on the evidence that the accused is guilty. Indeed, it would be mere stultification if it were contended that the prosecuting attorney could argue to the jury that the evidence should convince them although it did not convince him. A prosecuting officer therefore has the right to state his views as to what the evidence shows.

> On the other hand, there are many holdings and statements to the effect that such an expression of belief, opinion, or knowledge is improper if either expressly or inferentially based on facts not shown by the evidence produced at the trial. Such statements, it is said, add to the probative force of the testimony adduced upon the trial the weight of the prosecutor's personal influence or knowledge, or of his professional opinion, or the influence of his official position. [Footnotes omitted.]

Here, the state argues that the phrase "I think" was simply a mannerism used by the prosecutor and was not a testimonial statement. *See, e.g., United States v. Gabriel*, 715 F.2d 1447 (10th Cir.1983). Thus, the state contends that the comment may have been bad form, but it was not legal error. We note that the cases on which the state relies appear to have reviewed convictions on direct appeal, rather than a trial court's decision to grant a defendant's motion for a new trial. We assume that the standard of appellate review in this case is at least as deferential to the trial court as the standard applied by the federal appellate courts in the cases cited. Given the standard of review, in this case the record does not support a conclusion that the trial court erred in concluding that the prosecutor expressed a personal opinion as to defendant's guilt. Appellate review of a ruling by the trial court in the exercise of its discretion does not depend on whether the appellate court would have arrived at the same result. *State v. Gonzales.*

Here, the prosecutor used the term "I think" when recommending that the jury return a guilty verdict, and he clearly did not say he made that recommendation on the basis of the evidence. We note that the prosecutor generally, throughout his closing argument, used the phrase "I think" in referring to what the evidence had shown. However, as he began the brief summary with which he closed his remarks, he said "I think you should return a, a, a guilty verdict, for a crime here. Yes." There was an immediate objection and a motion for a mistrial.

Under these circumstances, the question for the trial court was whether the jury would have understood the recommendation as an expression of personal opinion. *See* ABA, *supra*, Standard 3–5.8(b), commentary, at 3.89–3.90. We see no reason to disturb the trial court's resolution of that question. The trial court judge was present, and therefore she was in a better position to resolve this question than we are. We do not think that the fact that the prosecutor generally had referred to the evidence prior to beginning his summary required the trial court to rule that the comment was not legal error. *See Swope v. State.*

In ruling on defendant's motion for a new trial, the trial court judge carefully distinguished the prosecutor's earlier comments on the evidence from the last one. She noted that the comments the prosecutor made after each of the earlier remarks to which defendant referred had clarified the prosecutor's intent. Thus, we believe the trial court understood that the thresh-

old question was whether the prosecutor had expressed a personal opinion.

In this case, the trial court might have concluded that, in context, the jury would have understood the statement as based on the evidence. However, it was also entitled to conclude that the jury would have understood the comment as a statement of personal belief. As indicated earlier, when the trial court might have decided either way on a question entrusted to its discretion, we will affirm its decision.

## WHETHER THE ERRORS WERE SUBSTANTIAL

 In the present case, the state does not contend that the statements made by the prosecutor were not prejudicial. Defendant has addressed the question of whether the errors were substantial and argued that in weighing the factors for and against both the state and defendant, the trial court could find that the balance was in defendant's favor. Because *Gonzales* holds that the trial court is in the best position to ascertain whether the legal error that can be identified is substantial, and that the state bears the burden on appeal to establish an abuse of discretion, we conclude that the trial court could find that the errors were substantial enough to warrant granting defendant's motion for a new trial.

## CONCLUSION

Since the state did not raise it, we will not address the issue of whether a curative instruction to the jury would have corrected the errors or whether defendant's failure to request such an instruction waived his right to a new trial. The supreme court has stated that it would not search the record to find an error on which to reverse the trial court. *State v. Weber*, 76 N.M. 636, 417 P.2d 444 (1966). Courts should not take it upon themselves to raise, argue, and decide legal issues overlooked by the lawyers. *State ex rel. Human Servs. Dep't v. Staples*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982).

The state has failed to show that the trial court abused its discretion in any clear or manifest manner. Therefore, the trial court's granting of defendant's motion for a new trial is affirmed.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

HARTZ, J., dissents.

HARTZ, Judge (dissenting).

I dissent because the majority indulges in unjustified presumptions to affirm the district court. We should reverse and remand for reconsideration of the motion for a new trial in light of the principles set forth below for deciding whether a new trial should be granted.

### A. Review Under Abuse-of-Discretion Standard

I fear that this court has come to view affirmance itself as a virtue. Perhaps this view is a natural consequence of heavy caseloads facing the judicial system. Nonetheless, the rule of law is threatened if appellate courts evade responsibility by too eagerly upholding lower court decisions on the basis that (1) the standard of appellate review is abuse of discretion and (2) the lower court is presumed to have exercised its discretion properly if there exists a rational view of the evidence that would support the result below. Sometimes that presumption is warranted; too often it is a fiction. The lower court's fact-finding and legal analysis may have differed significantly from what would be required to sustain the result. When the appellate court would have reversed the lower court's decision if the actual grounds for that decision had been spelled out, why should the decision be affirmed simply because the lower court failed to explain fully the grounds for decision?

Even though the abuse-of-discretion standard of review is appropriate in many circumstances, it can undermine the rule of law unless both appellate courts and lower courts assume certain responsibilities. As stated by the American Bar Association Commission on Standards of Judicial Administration, *Standards Relating to Ap-*

*pellate Courts* § 3.11, at 24 (Approved Draft 1977):

> An appellate court should not simply consider whether it would have exercised discretion in the same way, or pronounce in conclusory terms whether or not there was an abuse of discretion in particular circumstances. Rather, when a question of abuse of discretion is presented, the appellate court should undertake a guiding function by specifying the factors that it considers important and the range of choice within which the trial judge may properly act. Only in the light of that kind of exposition should it determine whether the trial court exercised its discretion improperly.

To enable the appellate courts to perform their task, each lower court bears the companion responsibility of articulating the basis of its exercise of discretion. *See* Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L.Rev. 635 (1971); *P.G. Publishing Co. v. Commonwealth of Pa. ex rel. District Att'y of Erie County*, 389 Pa.Super. 86, 566 A.2d 857 (Pa.Super.1989); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986); *Sheets v. Agro–West, Inc.*, 104 Idaho 880, 664 P.2d 787 (Ct.App.1983). *Cf. Ranch World of N.M., Inc. v. Berry Land & Cattle Co.*, 110 N.M. 402, 796 P.2d 1098 (1990) (in absence of finding to justify denial of prejudgment interest, denial was abuse of discretion); *State v. McGuire*, 110 N.M. 304, 795 P.2d 996 (1990) (since reason for enhancing sentence was not articulated, appellate court could not tell if it was predicated on an improper reason).

We should not sustain an exercise of discretion when the record suggests that the lower court should have reached a contrary result and the lower court has not articulated its basis for decision in sufficient detail to give us comfort that it applied the proper legal standard in exercising its discretion. Such is the situation here. Despite the district court's thoughtful and conscientious consideration of the new-trial motion, the record establishes considerable reason to doubt that the court applied the correct legal standard in granting a new trial. Therefore, a remand is necessary to enable the district court to apply the proper standard, even though it may reach the same result.

The district court's conclusions of law were:

> 1. The impermissible comments on the character of the accused and the statements of the prosecutor's personal belief of guilt of the Defendant constitute improper comment and misconduct.
> 2. The cummulative [sic] effect of the statements made by the prosecution require the granting of a new trial.

I will begin with consideration of the expression of personal opinion.

### B. *Prosecutor's Expression of Personal Opinion*

I agree with the statement in F. Lee Bailey & H. Rothblatt, *Successful Techniques for Criminal Trials* § 25:16 (2d ed. 1985) ("Bailey and Rothblatt"), quoted in the majority's opinion, concerning the propriety of an expression of opinion in closing argument. The analysis in that passage focuses on the evil that can arise from a prosecutor's stating an opinion: If the opinion is "expressly or inferentially based on facts not shown by the evidence produced at trial," the jury may give undue weight to the remark—in deference to the prosecutor's expertise, prestige, or presumed knowledge of additional facts. It is therefore wise for prosecutors to avoid using the word "I"; and trial judges on their own initiative should caution counsel about saying "I believe" or "I think." Yet when lapses in diction occur in final argument, the issue is whether the remark could have unfairly influenced the jury, not whether the prosecutor could have used language that avoided any possible objection.

It should be noted that the Bailey and Rothblatt standard differs somewhat from language in our earlier opinions. When a change in the legal standard is announced on appeal, there is an increased probability that the lower court (understandably) applied an incorrect standard. *Cf. Naranjo v. Paull*, 111 N.M. 165, 803 P.2d 254 (Ct.

App.1990) (remand for findings on issue when district court may have relied on case law suggesting that issue was premature). That is particularly true when the lower court, as here, expressly relied on authorities articulating the former standard. The district court's order in this case referred to two New Mexico opinions: *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App. 1983) and *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). *Diaz* stated the proposition that "a lawyer shall not assert his personal opinion as to the justness of a cause, as to the credibility of a witness or as to the guilt or innocence of an accused." *Id.*, 100 N.M. at 213, 668 P.2d at 329. *Vallejos* used similar language. *Id.*, 86 N.M. at 43, 519 P.2d at 139. The rule stated in those cases is more strict than the formulation of Bailey and Rothblatt, which permits an expression of opinion based on the evidence.

Perhaps the district court noted that the statements in *Diaz* and *Vallejos* were probably no longer good law, because the source of the quoted proposition had been amended. The language of *Diaz* came from NMSA 1978, Code of Professional Responsibility; Canons and Disciplinary Rules, Rule 7–106(C)(4) (Repl.Pamp 1982). *Vallejos* cited the same rule. After the opinion in *Diaz* was handed down, our supreme court revised the ethical rule to read: "A lawyer shall not * * * state a personal opinion, *not supported by the evidence* as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused[.]" SCRA 1986, 16–304(E) (emphasis added). With this change, the rule is in accord with the formulation of Bailey and Rothblatt. I think it unlikely, however, that the district court took account of this change in the law, because its order cites to *Diaz* and *Vallejos* but makes no reference to the new language in the Rules of Professional Conduct.

Thus, the uncertainty—if not the change—in the governing legal standard creates a substantial likelihood that the district court applied an incorrect standard. A review of the facts upon which the district court exercised its discretion suggests an even higher likelihood of such error.

The audio tapes of the argument have been made available to this court. Throughout his low-key, almost plodding, final argument, the prosecutor dispelled any notion that he was claiming superior knowledge of the facts of the case. He repeatedly noted that the jury had the final say in assessing the credibility of witnesses and determining the facts. Although he often used phrases such as "I think" or "I submit," the argument was devoid of dogmatism or assertion of authority.

The only objections to the prosecutor's saying "I think" or "I submit" came at the end of the closing argument. The three statements referred to in both defendant's motion for new trial and the order granting a new trial are labelled by bracketed numbers:

Prosecutor: If you want to believe it was an accidental shooting, it's up to you. [1] I submit to you I don't think it was an accidental shooting * * *.

Defense Counsel: Your Honor, we're going to object to the prosecutor's stating his views—what he thinks that the evidence shows. This is improper argument.

Judge: Overruled.

Prosecutor: It's what you can conclude. That's [?] what [?] I'm saying that [2] I believe you can conclude from the evidence it was not an accidental shooting. I can't tell you—you're going to have to do that in there—what kind of verdict you should return. [3] I think you should return a guilty verdict for a crime here, yes * * *.

Defense Counsel: Your Honor, we're going to object; I move for a mistrial at this time.

[After a bench conference the prosecutor told the jury that he was concluding his summation and would return later for rebuttal.]

In context, the natural interpretation of the prosecutor's final remark (the one that the district court relied upon in granting a new trial) is that he thought the evidence required a guilty verdict. That was de-

fense counsel's interpretation. At the bench conference immediately after defense counsel's motion for a mistrial, defense counsel stated:

> Any number of New Mexico cases say it is prosecutorial misconduct for the prosecutor to get up there and say: "Under the evidence you should find this man guilty * * *." "Under the evidence you should find this or that." This is his opinion. It is prosecutorial misconduct. We ask for a mistrial.

In defendant's new-trial motion, filed eight days later, defense counsel stated:

> There was prosecutorial misconduct in mis-characterization of the evidence and mis-statements of the law and statements to the effect that the prosecutor believed that the evidence had proven the guilt of the Defendant.

At least at the outset of the hearing on the motion, the trial judge appeared to have a similar view. She said:

> My construction of the statements made by [the prosecutor] actually had been not so much, "I am the D.A. and I think this and therefore you should find this," but rather, "I think this is what the evidence shows,"—that kind of thing.

(A later comment by the district court, however, might be understood as stating that the first two challenged statements are distinguishable from the third in that they are comments on the evidence.) If the district court viewed the prosecutor's statement in the same way that defense counsel characterized it, the court could not properly have granted any relief, because the statement was permissible.

To be sure, the district court may have found that the prosecutor's request for a guilty verdict was "expressly or inferentially based on facts not shown by the evidence produced at the trial," in violation of the Bailey and Rothblatt test. But given what appears on the audio recording, defense counsel's characterization of the remark, and the district court's express reliance on *Diaz* and *Vallejos,* I cannot presume that the district court so viewed the remark. Although one could read the necessary finding into the district court's or-

der, the matter is sufficiently doubtful to justify remand. The district court should have to state such a finding explicitly.

### C. *Paranoia Remark*

I also question the propriety of granting a new trial because of the prosecutor's "paranoia" comment. The comment referred to testimony that defendant kept twenty-one guns at home, half of them loaded. An issue at trial was whether defendant's discovery of his wife with her lover was unexpected or anticipated. The night of the killing defendant had interrupted a business trip at 10:00 p.m. and driven home, arriving shortly before midnight. There was evidence that his suspicions had been aroused by a telephone call from his wife about an hour before his departure. In an obvious attempt to suggest that defendant was a suspicious person, the prosecutor argued, " * * * twenty-one guns, and half of them are loaded, it may represent a kind of a paranoia in a person."

Only in a flight of fancy could one conclude that "paranoia" was intended to mean, or understood to mean, a clinical diagnosis. The word was used as a synonym for "suspiciousness." *See Webster's Third New International Dictionary* (1976), at 1638 (giving one definition of "paranoid" as "characterized by suspiciousness"). I seriously doubt that the district court understood it otherwise. Yet the majority presumes that the district court took "paranoia" to have its technical meaning and on that presumption affirms the ruling below. Such strained efforts to uphold lower courts can only breed disrespect for judicial review.

At any rate, in the context of this case I fail to see any particular importance to the distinction between "suspicious" and "paranoid in a technical sense" (except that defense counsel made the surprising concession at oral argument that he would not have objected if the prosecutor had used the word "suspicious"). The analysis of the propriety of the district court's new-trial order is essentially the same whichever meaning of "paranoia" is adopted.

The district court's only finding with respect to the "paranoia" remark is that it was an "impermissible comment on Defendant's character." The district court's conclusions of law repeat the statement. It appears to me that the district court misapprehended the limited meaning of "character" in the rules of evidence and insufficiently considered whether the "paranoia" remark actually prejudiced defendant. A discussion of "character" evidence is necessary to put in context the issue before this court.

SCRA 1986, 11–404(A), which is identical in substance to Federal Rule of Evidence 404(a), states the general rule: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" What, however, is the meaning of "character"? The answer involves subtleties that are not generally recognized.

An enlightening discussion of the matter appears in P. Rothstein, *Evidence in a Nutshell: State and Federal Rules* (1981). A leading treatise has endorsed the discussion as a "valiant effort to make general sense out of general nonsense." 1A Wigmore, *Evidence* § 54.1, at 1156 n. 2 (Tillers rev.1983). Professor Rothstein writes: " 'Character' is a propensity that is both general (i.e. propensity for 'honesty' or 'dishonesty,' 'violence' or 'non-violence') as opposed to specific (i.e., propensity for executing certain kinds of violent or dishonest acts, or for executing them in a certain manner) and possessed of good or bad moral connotations." P. Rothstein, *supra*, ch. 8, at 355–56.

In this view, personal attributes that in common parlance would be referred to as character traits are not considered to be character for purposes of the rules of evidence. Evidence of such attributes may be admitted at trial to prove habit, *see* SCRA 1986, 11–406, or to prove state of mind, such as intent, knowledge, absence of mistake, etc. *See* R. 11–404. For example, meticulousness could be considered a character trait, but evidence of that attribute might be admissible to prove that an omission by a party was not inadvertent, even though the reasoning process is essentially that condemned by Rule 11–404(A)—proving the party's meticulousness to prove that the party was meticulous on a particular occasion. *See Carson v. Polley*, 689 F.2d 562, 571–72 (5th Cir.1982) (defendant's loss of temper toward inmates on prior occasions tended to show intent to harm plaintiff inmate); *Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F.Supp. 727, 733 n. 7 (N.D.Ill.1980) (proof of prior discriminatory conduct admissible to show intent and motive). In short, evidence of traits not within Professor Rothstein's definition of "character" may well be admitted if the trial court finds its probative value exceeds the risk of improper prejudice. *See* P. Rothstein, *supra*, at 361–63.

Consequently, evidence to show that an individual is "suspicious" or "paranoid" does not necessarily run afoul of the rule against character evidence. That attribute may not be sufficiently general, and it does not bear strong moral connotations. After all, as stated by defense counsel at oral argument, police officers are very suspicious. So are reporters. The admissibility of evidence of "suspiciousness" or "paranoia" to prove state of mind must be resolved on a case-by-case basis by the trial court, balancing probative value against the possibility of improper prejudice.

Moreover, in this case the alleged error is twice removed from the improper admission of evidence barred by Rule 11–404(A). First, the alleged error was not the admission of any evidence. For tactical reasons defense counsel had not objected to the testimony concerning defendant's guns. Defendant's complaint is with the argument based on that evidence, not the admission of the evidence itself. Second, the district court sustained defense counsel's objection to the prosecutor's comment. The district court's ruling during trial was precisely what defense counsel requested at that time.

To summarize, in assessing the prosecutor's "paranoia" remark, one must recog-

nize that (1) "paranoia" or "suspiciousness" is not the sort of general and immoral attribute that Rule 11–404(A) necessarily bars the state from proving; (2) the remark was founded on evidence admitted without objection; and (3) the trial judge sustained defense counsel's objection to the remark. What, then, was the improper prejudice to defendant from the remark?

I can see only two possibilities for prejudice. First, the prosecutor could have distorted the jury's reasoning by simply suggesting that an inference of paranoia (or suspiciousness) could be drawn from the evidence of the loaded guns. That possibility is slight. The objection by counsel was: "There's been no evidence of paranoia in this case. The plaintiff is deliberately mischaracterizing the evidence." By ruling in favor of defense counsel, the district court communicated to the jury that there in fact was no evidence of paranoia. The authority of the court came down strongly against using the gun evidence to infer defendant's state of mind.

The second possibility is that the prosecutor's characterization of defendant as "paranoid" aroused the passions of the jury, hindering a rational evaluation of the evidence. In the words of *Diaz*, did the prosecutor's language have "the effect of inflaming the jury"? *Id.*, 100 N.M. at 214, 668 P.2d at 330. I think not. The word "paranoia" does not trigger string-'em-up emotions. As already noted, to be "suspicious" or "paranoid" is not to be evil or immoral. Even one suffering from clinical paranoia is generally the object of sympathy or ridicule rather than contempt. Furthermore, the prosecutor uttered the "paranoia" comment in the pedestrian tone that characterized the final argument. Defense counsel's expressed concern at trial was that there was no evidence of paranoia, not that the word was too inflammatory. Indeed, defendant had not objected to the prosecutor's reference to defendant's paranoia in his opening statement.

The probability that the "paranoia" comment so corrupted the jury's thinking as to justify a new trial is so slight that I cannot indulge a presumption that the district court made such a finding. It appears to me that either (1) the reference in the new-trial order to the "paranoia" remark was merely a makeweight addition to what the court perceived as a more substantial basis for granting a new trial (the prosecutor's expression of opinion as to guilt) or (2) the court mistakenly thought that a per se rule requires a new trial whenever the prosecutor makes an improper reference to character.

### D. *Conclusion*

Although my review of the audio recording of the prosecutor's final argument strongly indicates that it could not have swayed the jury through improper means, I recognize that such a finding is not for an appellate court to make. The district court has more evidence upon which to base a judgment of this type—that court can make a visual observation of the prosecutor's closing argument (including jury reaction) and can put that argument in the context of the conduct of the parties and counsel during trial. Also, insofar as rational beings can differ on what the facts were and the impact of those facts on the jury, the trial judge rather than this court bears the responsibility of finding the facts.

My sole concern is that on the present record there is no reason to presume—on the contrary, there is strong reason to doubt—that the district court applied the proper standard in deciding to grant a new trial. The rule of law therefore requires a remand. The countervailing interest in efficiency is particularly slight in this case. A remand would not create a significant burden on the system. Although the district court may wish to receive further argument from counsel, there is no need for any additional evidentiary hearing. Nor would a future appeal on the issue, if one is taken, consume much effort. So long as the district court recites the correct

standard by which it rules on the motion, that ruling would be essentially unreviewable. Therefore, it is appropriate to remand with instructions to the district court to apply the standards set forth in this opinion in determining whether defendant should be granted a new trial.