[No. B002850. Second Dist., Div. Four. Dec. 27, 1984.]

SANDRA TRAMELL et al., Plaintiffs and Appellants, v.
McDONNELL DOUGLAS CORPORATION et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*The opinion is certified for publication, other than THE "WATSON" APPEAL.
†Assigned by the Chairperson of the Judicial Council.

COUNSEL

Good & Novack, Ned Good, Michael D. Michaels, Post, Kirby, Noonan & Sweat, Michael L. Kirby, Chain, Younger, Jameson, Lemucchi, Busacca & Noriega and David V. Stiles for Plaintiffs and Appellants.

Shield & Smith, Theodore P. Shield, Jeffrey S. Behar and Kirk H. Nakamura for Defendants and Appellants.

OPINION

**BRECKENRIDGE, J.**\*—These cases arise out of the tragic crash of an American Airlines DC-10 near Chicago on May 25, 1979. The ensuing

---

\*Assigned by the Chairperson of the Judicial Council.

wrongful death cases were tried separately, but before the same judge during 1982. Defendants McDonnell Douglas and American Airlines did not contest and in effect *admitted* liability. The sole issue before each jury was damages. The "Tramell" jury returned a general verdict in the sum of $4,138,000. The trial judge granted defendants' motion for a new trial upon the grounds of excessive damages, conditioned upon plaintiffs' accepting a reduction of the verdict to $1,862,100. The heirs refused. The "Watson" jury returned a general verdict of $2.7 million. The trial judge granted defendants' motion for a new trial upon the ground of excessive damages, conditioned upon plaintiffs' accepting reduction of the verdict to $1.5 million. The Watson heirs likewise refused. The Watson and Tramell heirs appealed, and the defendants in both cases filed protective cross-appeals.

Because of the similarity and convergence of issues, these appeals and cross-appeals have been consolidated. Both deal with the propriety of the order granting a new trial, and whether the trial judge complied with the requirements of Code of Civil Procedure section 657, subdivision 5, which authorizes the grant of a new trial for excessive damages.[1]

We first take up the Tramell matters.

### EVIDENCE RELATING TO DAMAGES

Paul Tramell was killed in the airline crash of May 25, 1979. He left a wife, Sandra, to whom he had been married for thirteen years, their two children, Michael, seven, and Danielle, five, and a son, James R. Tramell, Jr., age fifteen, from a previous marriage. James Jr. lived with his mother's family and saw his father two or three times a year.

---

[1]The statute additionally provides: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting a new trial upon each ground stated.

" . . . . . . . . . . . . . . . . . . . . . . .

"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. . . . The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons.

"On appeal from an order granting a new trial . . . (a) the order shall not be affirmed upon the ground . . . of excessive . . . damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial . . . upon the ground of . . . excessive . . . damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

Decedent was a well-educated, ambitious 36-year-old, with a predominantly scientific background. He was employed as both a medical scientist and the director of applied research at the hospital division of the American Hospital Supply Corporation and had been with the same employer the preceding three years. His annual compensation had increased during his employment so that his projected compensation, including salary and bonus, for the year in which he died would have been $62,000. Of that amount, the salary was $46,200, the bonus $15,000.

Witnesses from American Hospital Supply Corporation testified to the decedent's high intellectual and outstanding business capabilities, the probability of promotion, and future compensation, including bonus and fringe benefit features.

An economist called by plaintiff opined that economic losses up to the trial date amounted to $218,274, present value of lost pension benefits totaled $298,547, and present value of future loss of earnings was $2,679,277, for a total economic loss of $3,196,098.

Sandra Tramell and deceased had some marital discord in 1976 and 1977 but overall were considered to have had a happy and loving marriage relationship. Decedent devoted time, love, and attention to the two children in his home, and contributed $50 a month in support to James, Jr. He had aspirations that all of his children would go on to obtain college degrees.

Prior to trial, the court granted plaintiffs' *in limine* motion that, consistent with *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626 [151 Cal.Rptr. 399], support to the heirs would be based upon gross earnings less personal consumption, as distinguished from net earnings, following deduction of income taxes. Thus no evidence was presented at trial concerning income tax consequences.

At trial, the defense called no witnesses, and as indicated, the jury assessed damages for all heirs at $4,138,000.

### MOTION FOR NEW TRIAL AND ORDERS

The defendants' motion for a new trial was based upon all statutory grounds, and included declarations from jurors Wilkins, Jackson, and

McClain.[2] Plaintiffs filed responsive papers, including declarations from eight of the nine remaining jurors, each identical with the other, except for name and identifying features.[3] The motion was argued, taken under sub-

---

[2]The declaration of the juror Wilkins states: "I was elected foreperson in the case of *Tramell et al.* v. *American Airlines, Inc., and McDonnell Douglas Corporation,* which resulted in a jury verdict on June 29, 1982.

"After I was elected foreperson, there was a general discussion by all the members of the jury relative to what was to be awarded. The objective of the jury was to determine what was a human life worth. A number of jurors commented that you cannot replace a human life, so let's award 40 million dollars. This was the initial conversation during jury deliberation, which was considered and discussed by all of the jurors.

"In order to achieve the objective, the jury then considered the economic loss aspect of the case. It was decided that we had to accept as fact the $3,196,000 figure put forth by Dr. Formuzis because we had nothing else to go by. There was no discussion or consideration of the defense attorney's cross-examination of Dr. Formuzis, and there was no discussion relative to replacing a stream of income on an annual basis or reimbursing the plaintiffs' economic loss of support on an annual basis.

"There was also discussion and consideration relative to the subject of attorney's fees. It was discussed that Mr. Good would receive 33% of what we awarded to Mrs. Tramell and her children; and that Mr. Stiles would receive 33% of what was awarded to James Tramell.

"There was discussion and consideration as to the impact of federal and state income taxes on the award to the plaintiffs. It was pointed out that the award to the plaintiffs would be taxed and that this would eat up a bundle. There was further discussion by the jurors that 'the Federal government needs the money' and that 'we will all benefit from the government receiving the money.' Another juror stated something to the effect that the same government is in trouble and so it 'doesn't bother me.'

"In light of the fact that the Judge and court attendant instructed us that, while we were deliberating, another jury in the next case would be selected, I felt the deliberations were rushed. After deliberating in the morning, one juror simply stated, to the effect of, let's just pick a figure. I want to get out of here after our free lunch.

"Probably the greatest percentage of time in deliberation was spent in a general discussion that the Judge's instruction simply did not provide us with enough guidance.

"I declare under penalty of perjury that, to the best of my recollection, the foregoing is true and correct.

"Executed this 20th day of July, 1982, at Los Angeles, California."

The declarations of jurors Jackson and McClain were substantially similar in content.

[3]The declaration of a juror named Barclay indicates: "My name is Miss Cynthia Barclay. My age is 21. I am single. I graduated from high school and I have one year at El Camino College. I have also attended Los Angeles Trade Tech. I am employed as an intermediate typist clerk by the Department of Social Services of Los Angeles County. I was a juror in the case of Trammell v. American Airlines and McDonnell Douglas Corp.

"During all jury deliberations in this case I was present, awake and alert at all times. These deliberations took place in a small jury room. I heard what we jurors were talking about during our deliberations.

"During jury deliberations in this case and before reaching a verdict I considered all of the evidence presented, including the cross-examination by Mr. Shield, and everything else presented during the trial, and the jury instructions. During the jury deliberations I considered and attempted to determine plaintiff's economic and non-economic losses according to the Court's instructions. From what I heard during the deliberations it sounded like this is what the other jurors were also attempting to do. As a matter of common sense and under the Court's instructions, I know I did not have to believe the testimony of any witness. However, the witnesses presented by the plaintiffs appeared and sounded believable to me.

"I did not discuss or consider any of the following in my jury deliberations or in the verdict I voted for in this case, nor did I hear any other juror discuss or say they considered any of the following during the jury deliberations or in the verdict they voted for in this

mission, and decided on August 19, 1982, by way of a three page minute order. Because of the significance of this order to our further discussion, we include it herein in its entirety.

"On the motion submitted to the Court on August 17, 1982, the Court now renders its decision as follows: The motion to strike declarations of jurors is denied. The declarations are relevant at least in so far as they indicate that attorneys fees and income taxes were considered in setting damages.

"The motion for New Trial is granted unless the plaintiffs before 4:00 PM, on August 25, 1982, file notice of consent to a reduction of the verdict of $4,128,000 to the sum of $1,862,000. The Court has weighed the evidence, and based on the entire record, has concluded that the jury should have reached a different verdict. The Court, in the exercise of its indepen-

---

case: "1. The subject of Federal or State income taxes, or whether the verdict would or would not be taxed, or whether the State or Federal Government needed tax money, or was in bad financial straits, or was in trouble, or that we would all benefit from the government receiving the money, or that the plaintiffs' award would be taxed and that would eat up a bundle.

"Whether or not the verdict would be taxed was a matter that I was unaware of and it would have made no difference to me or altered the verdict I voted for if I had known.

"2. The subject of attorneys fees, or whether or not Mr. Good or Mr. Stiles would receive 33⅓% as attorneys fees, or would receive any other percentage as attorneys fees. I had no information as to what the attorney's fees would or might be, or whether in an airline case of this nature attorneys fees would be added to the amount of the verdict or subtracted from the verdict or whether it was on an hourly or other basis. It would have made no difference to me or altered the verdict I voted for if I had known.

"3. The subject of a free lunch, or, 'lets [sic] just pick a figure, I want to get out of here after our free lunch,' or words to that effect. Neither I nor any other member of the jury talked about or appeared interested in whether somebody would or wouldn't buy us a lunch.

"4. The subject of whether the defendants were big corporations and therefore, the jury should 'stick it to them,' or words to that effect. The Court instructed us to treat a corporation like any other person and I obeyed the Court's instructions. I did not say or do anything, and I did not hear any other juror say or do anything that indicted [sic] that any of us were influenced in reaching our verdict because the defendants were corporations.

"5. The subject of being pressured or rushed or hurried to return our verdict, or that there was inadequate time to discuss or deliberate on this case. If I needed more time I would have asked for it.

"The subject that I or any other member of the jury, or the jury as a whole were bound to accept the testimony of the economist, or of any other witness, or that we had to accept as a fact any evidence if we did not believe it was true.

"As a matter of common sense I know that is what we have a jury to decide and the Court told us that too.

"7. The subject matter of what a human life was worth as such. What was said was to determine what the economic and non-economic losses to the family were as a result of the loss of that human life.

"8. The subject matter that since you can't replace a human life, let's award $40,000,000.00 or $20,000,000.00 or $200,000,000.00 or any other amount without regard to the evidence or the law.

"I have read this declaration and I declare under penalty of perjury that the foregoing is true and correct. Executed at Echo Park, California, on August 12, 1982."

dent judgment, determines $1,862,100 to be fair and reasonable based on the evidence. (This sum represents a 55% reduction of the verdict for reasons stated below.)

"GROUND

"Grossly Excessive Damages

"REASONS

"(1) The amount of the verdict, in itself, amounting to an apparent $3,125,000 economic damages and $1,000,000 for loss of comfort and society, is excessive.

"(2) The jury was mislead [*sic*] by plaintiff's counsel to believe that they were required to accept the computations, including the assumptions, of the expert without exercising their own individual judgments.

"(3) The jury was misled by the expert, in response to a question by plaintiff's counsel, to believe that all of decedent's earnings, after deducting personal consumption, would have gone to support of the survivors. This unequivocal statement served to add to the confusion created by presently existing California law in the dichotomy between BAJI 14.50 referring to loss of support (which by its very nature connotes a net sum after taxes), and *Rodriguez* v. *McDonnell-Douglas,* 87 CA3d 626, (which mandates that taxes not be mentioned and that the jury must consider only gross income). This resulted in a grossly inflated 'loss' to the survivors and provided a springboard for the economist's mathematical gyrations including a projection of decedent's earnings to $1,300,000 per annum during his lifetime.

"(4) *Misconduct of the jury.*

"(As the sole issue in this case is damages, the Court deems it appropriate to state this as a *reason* supporting the ground of excessive damages rather than as a ground for new trial which might prevent a remittitur and force a retrial of the case. The declarations provided by defendants and plaintiff are so diametrically opposite as to make it appear that the jurors were in different rooms when the discussions took place. In particular, the defense declarations state that the jury discussed and considered attorney fees and income taxes on the verdict, whereas, the plaintiff's identical 'canned' declarations relate no discussions but merely deny the specific allegations of the defense declarations. The Court finds the defense declarations, particularly that of the foreperson, Janice Wilkins, more credible, particularly in light of the enormity of the verdict.)

"a. *Misconduct in considering income taxes on the verdict.*

"The declarations of Monnie Jackson, Patricia McClain and Janice Wilkins make it clear that the jury assumed that their verdict would be subject to income taxes and that they deliberately inflated their verdict to compensate therefor. Not only were they in error on the law but their action constituted misconduct.

"b. *Misconduct in considering attorneys fees to be taken out of the verdict.*

"The same declarations make it clear that the jury assumed 33% of the verdict would go to the attorneys and inflated their verdict accordingly. This constitutes jury misconduct. *Krouse* v. *Graham,* 19 C3d 59.

"c. *General misconduct.*

"The affidavits indicate a general element of caprice on the part of the jury considering a $40,000,000 verdict, in discussions to the effect that much of the verdict would go to the government for taxes which would be a benefit to the jurors and the public generally, and that the government needed the money.

"GENERAL COMMENTS

"The Court has tried about 14 of these DC-10 crash cases in succession and in all the previous cases the jury has been able to see through the ridiculous situation created by *Rodriguez* and has reached reasonable (some a little higher or lower than others) verdicts. In no prior case, even on basically similar facts, had a jury approached 25% of this verdict. In the prior cases, the Court followed *Rodriguez,* as it did here, but the jury exercised its own common sense.

"Here, the jury did not do so, largely because plaintiff's counsel went farther in repeatedly insinuating that the conclusions of the economist represented the 'law' and had to be followed, and by the economist flatly stating that all of the gross income, after personal consumption, went to the survivors as support.

"The Court followed *Rodriguez* with great misgivings, because there was apparently no contrary authority in California and a Supreme Court hearing in *Rodriguez* was denied. The Court feels that the federal cases make a great deal more sense in using only 'net' income and that instructions on the effect of taxes would have avoided the problem here.

"A copy of this minute order is mailed this date to all counsel of record."

On August 24, 1982, plaintiffs moved to reconsider, and submitted further declarations from jurors Wilkins and Jackson. Juror Wilkins, in substance, declared that she had voted for the verdict, that she did not add anything to plaintiffs' damages for attorney's fees or income taxes, and did not hear any other juror state that he or she was adding anything to plaintiffs' damages for attorney fees or for income taxes. Further that when deliberations commenced, two categories of damages were placed on a blackboard, economic and noneconomic; that the jurors discussed and agreed on the elements of the damages, and upon adding same, arrived at a total of $4,138,000. There was no mention of inclusion of anything for attorney fees or income taxes in such procedure. Juror Jackson's declaration was substantially to the same effect.

Defendants appeared at this hearing, and submitted a memorandum to the court entitled "Suggestions as to Order Granting New Trial." As to this memo, the trial judge commented: "I think Mr. Shield's suggestion is a good one, so I am going to instruct the clerk to enter an amended minute order and . . . then to paragraph 5 labeled, 'insufficiency of the evidence' under 'Reasons' and incorporate the two paragraphs suggested by Mr. Shield as additional reasons for the granting of the remittitur."

At that point, plaintiffs' counsel objected, asserting that the specification of reasons was a nondelegable duty. The judge responded: "The court is not abdicating its responsibilities as stated in the law that the court must state its own reasons and own grounds and must not delegate that obligation or duty to anybody else. The court prepared its own order on the new trial and remittitur, but . . . is not precluded . . . from accepting a suggestion made by one counsel or another as to items to be included. So I have merely accepted Mr. Shield's suggestion as to additional reasons, and . . . done so with belief that the statement that Mr. Shield's draft is sufficiently explanatory. . . ." Thereafter, the clerk's minute order incorporated the following language taken verbatim from Mr. Shield's memo: "4. Page 2, after (4) is added number (5) entitled, 'Insufficiency of the Evidence' and the two paragraphs to be added read as follows: " 'The Court has reweighed the evidence, considered the credibility of witnesses and draw [*sic*] its own inferences from the evidence and finds that the evidence is insufficient to sustain a judgment in the amount found by the jury in its verdict.

" 'The Court, in its own assessment of the credibility of the witnesses Frank Ehmann and Peter Formuzis finds that their testimony concerning (a) the future earnings of the decedent, (b) the percentage of those future earnings which would have been contributed to the heirs for their support, (c)

the present value of that loss and (d) the manner and method employed by Formuzis in computing the present value of that loss, is not entitled to the weight and credibility necessary to support the damages awarded by the jury.'

"Plaintiff's time to consent is extended from August 25, 1982 to August 26, 1982 at 4:00 PM.

"Plaintiff's motion for reconsideration is denied.

"A copy of this minute order is mailed this date to all counsel of record."

ISSUES

1. Does the amended order of August 24, 1982, which purported to include specification number five comply with Code of Civil Procedure section 657?

2. Are the specifications of reasons legally adequate within the meaning of Code of Civil Procedure section 657?

3. Is there any substantial evidence in the record to support the validly specified reasons?

4. Does the order granting a conditional new trial for excessive damages in a case when liability is admitted violate plaintiffs' constitutional right to a jury trial?

5. Did the court abuse its discretion in considering other jury verdicts arising out of the Chicago DC-10 crash, and if so, does that render the conditional order invalid?

6. Did the trial court abuse its discretion in referring to its disagreement with *Rodriguez* v. *McDonnell Douglas Corp.*, *supra*, 87 Cal.App.3d 626, and, if so, does that render the conditional order invalid?

DISCUSSION

██ 1. The amended order of August 24, 1982, does not comply with Code of Civil Procedure section 657. Specification number 5, as adopted by the court, was drafted in its entirety by defense counsel. The seminal case interpreting this statute, *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 113 [65 Cal.Rptr. 315, 436 P.2d 315], mandates that the trial judge be the author of the specification. *Mercer*, however, also authorized counsel to

make suggestions to the judge or to point out apparent deficiencies in the order, within the ten day period for filing written specifications. (68 Cal.2d at p. 123, fn. 8.) Respondent contends that this is all that happened in the instant case. However, a review of case law suggests to the contrary.

In *La Manna* v. *Stewart* (1975) 13 Cal.3d 413 [118 Cal.Rptr. 761, 530 P.2d 1073], the Supreme Court held that an oral recitation of reasons by the trial judge does not comply with the statute. At page 422, the court stated: "In adopting section 657 the Legislature has expressly directed that the court 'prepare,' 'sign,' and 'file' the written specification of reasons. . . . Each of these statutory requirements, accordingly, is mandatory and jurisdictional."

In *Devine* v. *Murrieta* (1975) 49 Cal.App.3d 855 [122 Cal.Rptr. 847], the trial judge's reasons, as here, were set forth in the minute order. This was a medical malpractice case, and a defense verdict was set aside for insufficiency of the evidence. The specification of reasons set forth numerous reasons why the defendant physician was negligent, but was silent as to the issue of causation. The minute order also purported to incorporate as part of its specification of reasons the entire argument set forth in plaintiff's points and authorities. The Appellate Court made the following comment at page 860: "One purpose of the requirement of a specification of reasons is to encourage careful deliberation by the trial judge, and the statutory prohibition against an attorney-prepared specification is in furtherance of that purpose. The adoption of the attorney's argument no more serves the statutory purpose than does the adoption of an attorney's post-argument specifications." Because there were no specifications of reasons to support the presence of proximate cause, the remaining specifications were deemed deficient and the order reversed.

In *Oberstein* v. *Bisset* (1976) 55 Cal.App.3d 184 [127 Cal.Rptr. 413], the trial judge made a minute order conditionally granting a new trial on damages. The specification of reasons contained in the minute order was conclusionary and inadequate. On the ninth day after the motion was granted, the court signed and filed a detailed specification of reasons voluntarily drafted by defense counsel. On appeal, the court found that the minute order specification was inadequate, and the court's adoption of defense counsel's specifications violated the statute. As to defense counsel's argument that he was simply seeking to assist the court, within the meaning of *Mercer, supra,* the court, at page 189, stated: "[I]f the trial judge is dilatory in preparing and filing his specification of reasons or if those which he does prepare and file are deficient, counsel for the moving party is not required to stand by helplessly but may remind the judge of the statutory requirements. He may do this by calling the judge's attention to the express terms of section 657

and by citing pertinent case law interpreting them. In our view, however, *Mercer* does not contemplate 'assistance' to the extent of drafting the specification of reasons for the court's adoption, for to countenance such a practice would permit circumvention of the statutory mandate that the judge is the one who must prepare the statement of reasons."

In our view, the *Devine* and *Oberstein* cases are controlling. Applying those principles causes us to conclude that the amended order of August 24, since it simply adopted counsel's specification verbatim, is invalid and must be disregarded.

2. Is the specification of reasons set forth in the order of August 19, 1982, legally adequate?

■ Specifications for new trial are sufficient if they make a record sufficiently precise to permit meaningful review. (*Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363 [90 Cal.Rptr. 592, 475 P.2d 864].) Specifications are insufficient if simply couched in the form of conclusions or statements of ultimate fact. (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 698 [106 Cal.Rptr. 1, 505 P.2d 193].)

Under these guidelines, specifications 2, 3, and 4 are clearly adequate. Specification number 1 is simply a conclusion, and hence invalid.

3. Is there any evidence in the record to support specifications 2, 3, and 4?

■ (a) Specification number 2 is not supported by any substantial evidence in the record. This specification appears to relate to attorney misconduct. Respondents' brief, in this connection, refers to three occasions in plaintiffs' opening and three occasions in plaintiffs' closing arguments where counsel comments on the fact that the defendants failed to produce any evidence. Defendant now contends that the jury must thereby have understood that they were required to abide by the plaintiff experts' conclusions as the only "evidence" in the case and were not required to use their own judgment or to consider the cross-examination of the plaintiffs' expert witnesses as evidence.

We have reviewed each such reference in the context in which it was made. Without exception, the arguments were simply permissible comments on the state of the record. One comment was inaccurate.[4] However, no

---

[4]"And that means if you put some evidence in and there is no evidence opposed to it of necessity, the evidence that plaintiff puts in has to have the more convincing force."

objection was interposed and in the absence thereof any such claim is deemed waived. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 797 [174 Cal.Rptr. 348].) Further, even if such were deemed error, it certainly was harmless. The jury was adequately instructed with standard BAJI instructions on burden of proof (2.60), credibility of witnesses (2.20), expert witnesses (2.40 and 2.42), and statements of counsel not evidence (1.02), and it must be presumed the jury followed such instructions.

■ (b) Specification number 3 is not supported by any substantial evidence. This specification appears to simply be an expression by the judge that *Rodriguez* v. *McDonnell Douglas Corp.*, *supra*, 87 Cal.App.3d 626, is bad law and results in an untruthful presentation to the jury. There is no question but that money spent on income taxes by a wage earner is no longer available for support of dependents. In that sense, an unrealistic picture is presented to the jury, which arguably can result in considerable distortion of reality, particularly in a wrongful death case when the deceased is relatively young, has an extended work life expectancy, has young dependents, and appears to be a high salary earner.

However, it appears well established that *Rodriguez,* even though not a death case, controls. Recently, the Fourth District in *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512 [196 Cal.Rptr. 82], a wrongful death case, in a 2-1 decision held that *Rodriguez* applied. A hearing was denied by our Supreme Court. The principle of stare decisis leads us to the same conclusion. Thus, specification number 3 cannot stand.

(c) Specification four is supported by substantial evidence in the record.

Specification 4 deals with juror misconduct. ■ Misconduct by a jury is in itself a ground for granting a new trial. The trial judge, however, chose to include misconduct by jury as a reason for his conclusion that damages were excessive. This is a permissible procedure. In *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 104 [95 Cal.Rptr. 516, 485 P.2d 1132], the Supreme Court, in a different context, observed "the same acts of misconduct may frequently be cited both as evidence of concealment of bias and as an objective fact likely to have improperly influenced the jury's verdict." There is no legal or logical impediment to the trial judge's decision that juror misconduct was an objective fact which improperly influenced the verdict herein.

■ Section 1150 of the Evidence Code, as interpreted by *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], permits juror misconduct to be established by juror affidavit, so long as the declaration consists of proof of overt acts, objectively ascertainable. Proof relat-

ing to the subjective reasoning process of any individual juror is not admissible and cannot be so considered.

■ As stated in *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98 at pages 106, 108: " 'It is the general rule that statements in affidavits are presumed to be made on personal knowledge unless stated to be on information and belief and unless it appears affirmatively or by fair inference that they could not have been, and were not, on such knowledge. . . .' (Civil Procedure Before Trial (Cont.Ed.Bar) p. 588.)

■ "Upon appellate review of an order granting a new trial, 'all intendments are in favor of the action taken by the lower court [and] the affidavits in behalf of the prevailing party are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated.' [Citations.]

" . . . . . . . . . . . . . . . . . . . . . . .

■ " 'When an issue is tried on affidavits . . . and where there is substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.' [Citations.]"

■ The trial court relied in part upon *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022]. In that case, the declarations established that not only had the jury discussed and considered inclusion of attorney fees, but had expressly agreed to inflate damages to include attorney fees. In that sense, the instant case is distinguishable, because the foreperson's declaration recites that attorney fees and income taxes were indeed discussed and considered. There is no reference to an express agreement. However, the Supreme Court in *Krouse* went on to say, at page 81: "Generally, it is clear, attorneys' fees are not recoverable in personal injury or wrongful death actions. [Citations.] An express agreement by the jurors to include such fees in their verdict, or extensive discussion evidencing an implied agreement to that effect, constitutes misconduct requiring reversal. [Citations.]"

The declaration of the foreperson submitted by the defendant, which the trial court found to be true, evidenced a discussion dealing with the specifics of attorney fees, including percentages, and income taxes, both state and federal. Apparently some jurors even commented that both governments could use the money and that individual jurors would benefit thereby. The fact that such comments were made is overt conduct, objectively ascertainable and corroborated by two other jurors. The trial judge found, upon contradictory evidence, that there was an extensive discussion among the

jurors evidencing an implied agreement to inflate their verdict to compensate for attorney fees and taxes. This finding, pursuant to *Weathers, supra,* 5 Cal.3d 98, having been based upon competent, though contradictory evidence, is not to be disturbed on appeal.

4. The court's order, granting a new trial for excessive damages, in a case when liability has been admitted, does not violate plaintiff's constitutional right to a jury trial. This issue was answered long ago. As stated in *Estate of Bainbridge* (1915) 169 Cal. 166, 169 [146 P. 427]: "[I]t is clear that the constitutional guarantee (art. I, sec. 7) is fully observed when the verdict of the jury in the case is rendered and recorded. The remaining and different question—whether judgment shall be pronounced upon the verdict or the verdict set aside—is 'strictly of legal cognizance,' which must be determined by the trial court: . . ." Nothing has occurred since 1915 to cause us to change our mind.

5. The trial judge did not abuse his discretion by referring in his "general comments" to verdicts in other DC-10 crashes he had tried. Obviously, a trier of fact cannot rely upon or consider what happens in other cases. A jury is traditionally admonished that every case is different and that they must decide their case solely upon the evidence and law submitted to them. The trial judge did not specify among his reasons for a new trial anything relating to other cases. If he had done so, that would have been a different problem. But lawyers and judges continually rely upon their experiences, and those of other lawyers in evaluating cases for settlement or possible verdict. Jury books are a litigation phenomenon, relied upon by plaintiffs and defense counsel, as well as judges. There is nothing unreasonable in what is set forth in "General Comments." Others might disagree with the judge, but that does not make it an abuse of discretion or other cause sufficient to nullify his order granting a new trial.

6. The trial judge did not abuse his discretion by voicing his personal disagreement with *Rodriguez* v. *McDonnell Douglas Corp., supra,* 87 Cal.App.3d 626. This has previously been touched upon otherwise in this opinion and needs little further comment. It is clear that insofar as the jury itself was concerned, he scrupulously complied with *Rodriguez.* That is what was important. The fact that he made some references to *Rodriguez* in his new trial order does not mean that the order is otherwise invalid.

The appellant has made some other general contentions which have been considered and rejected. They are not of sufficient merit to include herein.

In conclusion, the order granting the new trial is affirmed. The fact that four of the five specified reasons were not supported by the evi-

dence, is not determinative. The fact of juror misconduct, which the trial court found to be true, is sufficient in itself. It is of such a nature that it vitiates the entire trial.

In view of our holding in the instant matter, there is no necessity to evaluate the merits of the cross-appeal and it is accordingly hereby dismissed.

### THE "WATSON" APPEAL

### EVIDENCE RELATING TO DAMAGES*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Woods, P. J., and Arguelles, J., concurred.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied April 3, 1985. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 157.