872 P.2d 889

STATE of New Mexico, Plaintiff–Appellant/Cross–Appellee,

v.

Robert DANEK, Defendant–Appellee/Cross–Appellant.

Nos. 13319, 13372.

Court of Appeals of New Mexico.

May 7, 1993.

Certiorari granted April 6, 1994.

Tom Udall, Atty. Gen., Jerome Marshak, Rumaldo Armijo, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant/cross-appellee.

James R. Toulouse, John G. Travers, Toulouse & Associates, P.A., Albuquerque, for defendant-appellee/cross-appellant.

## OPINION

CHAVEZ, Judge.

The State appeals the trial court's grant of a new trial to defendant after a jury convicted defendant of several securities law, commodities law, and pyramid promotional scheme violations.

Specifically, the State argues that the reasons given by the trial court were insufficient to grant a new trial because: (1) the State was entitled to present evidence of defendant's prior conviction to the jury, and (2) the jury was properly instructed on the definition of a security.

Defendant cross-appealed challenging the trial court's denial of defendant's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict. Defendant also filed a motion to dismiss the State's appeal on the ground the grant of a new trial was not a final order. We affirm the trial court's grant of a new trial. In light of our disposition, we do not address defendant's cross-appeal.

## FACTS

This case arises from a marketing plan promoting American Gold Eagle Coins. American Gold Eagle Coins are gold bullion coins. Defendant Danek and co-defendant Adams were indicted on multiple counts of fraud, fraudulent securities or commodities practices, selling unregistered securities or commodities, transacting business as broker/dealer for a security or commodity without a license, operating an illegal pyramid promotional scheme, conspiracy, criminal solicitation, and racketeering. Shortly after trial began, the trial court granted co-defendant Adams a mistrial and severed his charges from those of defendant Danek. Therefore, this appeal deals solely with defendant Danek.

Operating through Success Marketing, Inc. (SMI), defendant marketed American Gold Eagle Coins through SMI's American Gold Eagle Bullion Coin Purchase Agreement (GPA). Essentially, the GPAs were a method of selling the coins through a down payment of twenty-five percent with full payment required within ninety days. As an option in the agreement, the purchaser of a GPA could earn commissions for sales of additional GPAs to others. The commissions could either be received directly or applied toward the balance of the seller's own GPA.

Defendant also promoted another program through an Independent Sales Representative Agreement (ISRA). Under that program people could become sales representatives for SMI and simply earn commissions by selling GPAs to other people. All of the victims involved in this case were GPA holders who were then encouraged to become sales representatives by recruiting two other people to purchase GPAs. GPA holders were free to simply pay off the contract and receive the coins without seeking others to participate. However, because of a twenty-five percent administrative markup fee that SMI charged on each GPA, simply buying the coins outright through the use of a GPA would result in paying $4 for every $3 worth of coin.

After trial, the jury returned a somewhat confusing verdict. Defendant was convicted of eight counts of fraudulent conduct in connection with the sale of commodities, unlawfully selling a commodity contract, transacting business as a securities broker, dealer, or sales representative without a license, and establishing, operating, advertising, or promoting a pyramid scheme. The unusual thing about the verdict is that the failure to disclose the prior fraud conviction was apparently the State's sole means of proving fraudulent commodities and securities practices. Yet, the jury only found fraud with respect to the sale of commodities. The trial court's

interpretation of the verdict was that the jury may have acquitted defendant on the securities charges.

Defendant moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the motion for a new trial. The grounds actually relied on by the trial court, as well as the correctness of the ruling, are disputed by the parties and will be discussed more fully below.

## I. MOTION TO DISMISS

■ As mentioned above, the State appeals the trial court's grant of a new trial to defendant. In *State v. Chavez*, 98 N.M. 682, 652 P.2d 232 (1982) (*Chavez I* ), the Supreme Court held that the state was an aggrieved party entitled to appeal a trial court's grant of a new trial when a defendant has been found guilty by a jury. The trial court in *Chavez I* granted the defendant a new trial without providing the grounds for its ruling. The Supreme Court reasoned that where a jury reaches a verdict "after a trial which is fair and free from error", and such verdict is set aside, the State is aggrieved within the meaning of the New Mexico Constitution.

Defendant argues that *Chavez I* is distinguishable from this case, and the State's appeal should be dismissed because the order granting a new trial is not a final, appealable order. Defendant first argues that because the trial court did not enter judgment and sentence after the jury verdict, there is no final appealable order. However, SCRA 1986, 5–614(C) (Repl.Pamp.1992), requires that a motion for new trial be made and decided before the entry of judgment and sentence. Thus, we do not believe the lack of a judgment and sentence makes a difference for finality purposes, especially in light of *Chavez I.*

Defendant also contends that *Chavez I* is distinguishable from this case because it did not address the issue of finality. In addition, defendant seems to argue that *Chavez I* is different from this case because the trial court in that case did not state its grounds for granting a new trial on the record. Because the trial court in this case did state its grounds on the record, defendant argues the

order is otherwise not appealable because it is not a final order.

As defendant suggests, *Chavez I* did not expressly discuss the finality aspect of a state's right to appeal from an order granting a defendant a new trial. As a general rule, the majority of other jurisdictions do not consider such orders appealable by the State due to lack of finality. *See* Charles C. Marvel, Annotation, *Appeal by State of Order Granting New Trial in Criminal Case,* 95 A.L.R.3d 596, 601, § 4(a) (1979). However, there are some notable exceptions. For example, a direct appeal from an order granting a new trial is available if the appeal only involves a pure question of law. *See Commonwealth v. Jones,* 370 Pa.Super. 591, 537 A.2d 32 (1988); *see also State v. Lynn,* 120 S.C. 258, 113 S.E. 74 (1922); *State v. White,* 207 La. 695, 21 So.2d 877 (1945); *State v. Lindsey,* 302 N.W.2d 98 (Iowa 1981).

This Court has interpreted *Chavez I* to require a two-step analysis of a state's appeal of the grant of a new trial. *See State v. Gonzales,* 105 N.M. 238, 731 P.2d 381 (Ct. App.1986). First, the appellate court must determine whether the grant of a new trial was based on legal error. If so, the appellate court must then determine if it was a proper exercise of the trial Court's discretion to order a new trial due to the legal error.

The trial court's grounds for a new trial are set forth in the transcript of the hearing and then incorporated into the written order granting the new trial. As a result, there is some ambiguity concerning what the exact grounds relied upon by the trial court are, and what the grounds are that the parties dispute.

. The State argues that the trial court only relied on two grounds for its decision: (1) the uniform jury instruction defining a security was an incorrect statement of the law, and (2) the admission of defendant's prior conviction was error. Defendant, however, argues that in addition to the above reasons listed by the State, the trial court relied on four additional grounds: (1) the trial court unfairly allowed the trial to become a battle of experts and then unfairly clothed the State's experts with a mantle of credibility, (2) the

trial court allowed improper verdict forms to go to the jury, (3) the trial court erred by refusing to tender an instruction on the definition of commodity, and (4) cumulative error resulted in an unfair trial.

Our review of the trial court's reasoning leads us to believe that it was most concerned with the way in which expert testimony was admitted, and the probability that the court's manner of admitting expert testimony and instructing the jury gave the State an unfair advantage. Two remarks by the trial court are, in our view, particularly revealing. After stating that it believed its instruction on the definition of a security was wrong, the trial court stated:

> [T]his case was somewhat a battle of experts as to definitions and as to what made both a security and a commodity. I allowed both parties to present evidence and experts, basically telling the jury what they thought the law was. I'm not sure, on second thought, that that's an appropriate way for this case to have proceeded.

> If this case were to go on appeal, I think that would be found to be harmless error, because there was no objection from either side. But, what it does in this case is, when I gave the jury an instruction which went along specifically with the state's proposed instruction and what the state's experts said the law was, that gave the state's expert a standard of credibility much more than the defendant's.

> Basically, the Court is saying that they agreed with the state's experts, therefore, the state's expert was right on everything. And I think that is error.

The State later pointed out that in *Chavez II* the Supreme Court ruled that a trial court's finding that instructions were inadequate and confusing could not serve as a basis for granting a new trial. In response, the trial court stated:

> Sure. I considered that case and this is an extraordinary remedy. And it's the totality of the circumstances that I feel that I made erroneous rulings in this case; and, because of that, I feel the defendant didn't get a fair trial.

We believe the heart of the trial court's concern was the way in which he allowed expert testimony into the trial. Whether he agreed with the uniform jury instructions that he was required to give, the trial court seemed most concerned about the mantle of credibility that the State was given by the trial court's decision to allow substantial expert testimony on what the State believed the law was, followed by jury instructions that reiterated what the State's experts had said. We believe the grounds for the grant of a new trial in this case involve mixed questions of law and fact which other jurisdictions would refuse to review on appeal. *See* Charles C. Marvel, Annotation, *Appeal by State of Order Granting New Trial in Criminal Case.* Nevertheless, that result is by no means indisputable. Moreover, we must be mindful of our role as an intermediate appellate court. *See Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) (Supreme Court precedent controls). And while we may be sympathetic to defendant's arguments, we hold that the language in *Chavez I* compels this court to reach the merits of the State's appeal.

## II. THE STATE'S APPEAL

The State challenges the trial court's grant of a new trial. As we mentioned above, the parties dispute the actual grounds relied upon by the trial court. The trial court's incorporation of the transcript of the hearing as its statement of the grounds relied upon makes the question somewhat difficult to resolve. Our review of the hearing leads us to conclude that the following reasons were relied upon by the trial court when granting the new trial: (1) the uniform jury instruction given was an incorrect statement of the law; (2) it was error for the trial court to allow defendant's prior conviction to be admitted into evidence; (3) the trial court erred in the manner in which it allowed expert testimony concerning what constitutes a security or commodity; and (4) cumulative error prevented defendant from receiving a fair trial.

When reviewing a trial court's grant of a new trial, the appellate court must follow a two-step approach. *See State v.*

*Gonzales.* First, this court must determine whether the grant of a new trial is based upon legal error. *Id.* 105 N.M. at 241, 731 P.2d at 384. Second, this court must determine whether the error is substantial enough to warrant the exercise of the trial court's discretion. *Id.* The trial court's decision will only be reversed upon a showing of clear and manifest abuse of discretion. *Id.* As we discuss below, although some of the reasons relied upon by the trial court do not survive the two-part test set forth in *Gonzales,* we still believe some of the reasons given by the trial court are sufficient to support its decision to grant a new trial.

## A. Jury Instruction

■ One error the trial court believed it made was in giving the uniform jury instruction that defines a security. Whatever the trial court's concerns about the correctness or clarity of the instruction, the fact remains that it is a uniform jury instruction. *See* SCRA 1986, 14–4310 (Cum.Supp.1992). And, the trial court may not base the grant of a new trial on a uniform jury instruction that it believes is somehow inadequate or incorrect. *See Chavez II.*

## B. Prior Conviction

■ The next concern of the trial court was its decision to allow the State to admit evidence of defendant's prior federal conviction for fraud. Defendant argues that the probative value of this evidence was clearly outweighed by its prejudicial impact. The State disagrees with defendant's characterization of the issue and argues that the prior conviction was its only means of proving securities fraud. More specifically, the State contends that defendant's failure to disclose his conviction to potential investors was the omission of a material fact that violated the securities and commodities fraud statutes. *See* NMSA 1978, §§ 58–13A–7(B), –13B–30(B) (Repl.Pamp.1991).

We agree with the State's analogy to felon in possession prosecutions. Since the prior conviction in this case, as well as a felon in possession case, is an essential element of the State's case, the State should be allowed to present such evidence to the jury. Although

this specific question is unanswered in New Mexico, the State points out that other jurisdictions faced with this question have decided to allow the State to present evidence of a defendant's prior conviction. *See People v. Colby,* 153 Cal.App.3d 733, 200 Cal.Rptr. 613 (1984); *see also Huett v. State,* 672 S.W.2d 533 (Tex.Ct.App.1984); *Kirk v. State,* 611 S.W.2d 148 (Tex.Civ.App.1981).

Defendant raises two basic arguments against the admission of the prior conviction. First, defendant argues that the State should have, and could have, relied on other evidence to prove fraud without having to rely on the prior conviction. As we see it, the problem with defendant's argument is that he assumes the State is required to prove its case, if it can, by some other means than the use of a prior conviction. Defendant relies on *State v. Taylor,* 104 N.M. 88, 717 P.2d 64 (Ct.App.1986), for this proposition. However, we believe the case is inapplicable in this situation. *Taylor* speaks of alternative means of proof in the context of trying to impeach a prosecution witness. It does not address situations where the State is trying to prove an essential element of its case with the use of a prior conviction. Thus, we think the State's inability or unwillingness to prove fraud through some other means is irrelevant to whether the trial court was correct in concluding that admission of the prior conviction was error.

As an alternative argument, defendant suggests that the State's reliance on *People v. Colby* and similar cases is unwise. Defendant argues that *Colby* overstates the ability of the State to rely on a prior conviction to prove fraud through material omission. Defendant somewhat persuasively argues that not every prior conviction which is not disclosed to potential investors should be considered a material omission tantamount to fraud.

For instance, defendant argues that a conviction for assaulting a police officer is completely irrelevant to a securities transaction and is not a material omission. Whether that is true or not, in this case, and in *Colby,* the prior conviction is for fraud. In our view, the fact that defendant was previously convicted of fraud is very relevant to poten-

tial investors and is a material omission when not disclosed to those investors. *See People v. Colby.* As a result, we need not decide, beyond the facts of this case, what types of prior convictions are relevant to a potential investor's decision to purchase.

One last concern we have on this issue is the effect the admission of the prior conviction had on the jury's consideration of other counts not involving fraud. The prior conviction was not an essential element of those counts, but the disclosure of the prior conviction certainly could have influenced the jury's decision on those counts. As to the non-fraud counts, we do believe the prejudicial impact of the prior conviction may well have outweighed its probative value. However, from our review of the record, it does not appear that defendant asked that the non-fraud charges be severed from the fraud charges because of the impact the prior conviction would have, nor did he request a limiting instruction.

The dissent relies upon the fact that the prior conviction would be admissible to impede defendant on all counts. We note, however, that the prior conviction was admitted in the State's case-in-chief before defendant testified. Impeachment before defendant testified was premature. *Cf. State v. Duran,* 107 N.M. 603, 762 P.2d 890 (1988) (prosecution's conduct in calling defendant's alibi witness for the purpose of impeachment during its case-in-chief was entirely improper because no reason to impeach alibi testimony until defendant presented alibi if he had chosen to do so).

**C. Expert Testimony**

■ The third reason the trial court appeared to grant a new trial was because of the way it allowed expert testimony regarding what constitutes a security. As the trial court noted, there was a great deal of expert testimony presented by both sides concerning whether the GPA was a security. As a result, two experts testified as to what they believed was the legal definition of a security. When the trial court finally instructed the jury on the definition of a security, it closely tracked the definition previously advanced by the State's experts. The trial court believed

it was error to allow experts to testify as to what the law was, and then give a jury instruction that agreed with the State's experts. In essence, the trial court believed it gave the State's experts credibility by the way it admitted the evidence and instructed the jury. As a result, the trial court believed it prevented defendant from receiving a fair trial.

To the extent the experts testified on whether defendant's conduct constituted transacting in securities, the testimony was probably proper. However, as the trial court recognized, it was improper for the experts to testify about the legal definition of a security. *See State v. Gibson,* 113 N.M. 547, 828 P.2d 980 (Ct.App.1992) (expert testimony is not the appropriate manner of presenting the law to the jury, rather it is for the court to instruct the jury on the law). Thus, we hold there was legal error in the way the expert testimony was presented to the jury.

**D. Cumulative Error**

■ Finally, the trial court ruled that it had made several erroneous rulings which, in the totality of the circumstances, prevented defendant from receiving a fair trial. We think this is significant since in recognizing the State's right to appeal *Chavez I* spoke of the situation where the jury reached a verdict "after a trial which is fair and free from error." Here, the district court recognized that its evidentiary rulings when combined with the jury instructions deprived defendant of a fair trial. We view this portion of the trial court's ruling as equivalent to the second part of the test this court must apply in determining whether to uphold the trial court's decision to grant a new trial.

The impact that the errors had on the jury and the ability of defendant to receive a fair trial are questions on which we give the trial court great deference.

In *Ferguson* we noted that the scope of discretion granted a trial court decision on review depends on the nature of the issue. 111 N.M. 191, 192–93, 803 P.2d 676, 677–78. In discussing the extent of trial court discretion to grant a new trial, we quoted a salient passage from M. Rosenberg, *Judicial Dis-*

*cretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635, 665 (1971):

> Review-limiting discretion in its stronger forms confers upon the trial judge unusual power with regard to many issues, and as a corollary, grave responsibility. He becomes a court of last resort on these issues, not because appellate machinery is lacking, but because the matters are not susceptible to firm legal rules and because the trial judge is thought to be in a better position than appellate judges to decide the matters wisely and justly.

In applying the second part of the *Gonzales* test to the record before us, and granting appropriate deference, we believe the errors were significant enough to warrant the trial court's exercise of its discretion in ordering a new trial.

When contemplating whether the trial court should have exercised its discretion, we were especially persuaded by how carefully the trial court considered its options and how strongly it felt that a new trial was necessary in the interest of justice. Perhaps the trial court demonstrated its concern and thoughtfulness most clearly when it made the following statements:

> Last night, I thought about this case all night. This is—very seldom do I have a hard time sleeping because I can't get a case or my job out of my mind. Usually, I make a decision and just go on about my business. I thought about this case all night and some things came to mind....
>
> .... This is the first time I've done this in my many years as a judge. Under the circumstances, I find that the defendant's motion for a new trial is appropriate and should be granted.

Based on the transcript alone, we find the trial court best equipped to adequately assess the impact which the improper expert testimony and prior conviction had on the jury's consideration of each charge against defendant. We therefore feel compelled to defer to the trial court's superior ability to gauge the "feel" of the trial. *See generally State v. Ferguson.* Indeed, the record reflects that the trial court was relying on its feel of the trial and many years of experience "... when it decided to grant defendant's motion for a new trial following the jury verdict of guilty, a decision the trial court characterized as rare in its experience."

In the final analysis, the question is whether the errors that did occur below were significant enough to warrant the trial court's exercise of discretion in granting defendant a new trial. Certainly, whether to order a new trial under the circumstances of this case is a decision that different people will make differently. But for the reasons set forth above, we cannot say the trial court's decision to grant a new trial was a clear and manifest abuse of discretion. *See State v. Gonzales; State v. Ferguson.*

## III.  CROSS–APPEAL

▓ Relying on *State v. Davis,* 97 N.M. 745, 643 P.2d 614 (Ct.App.1982), defendant suggests that he has the right to appeal the trial court's denial of his motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict, even if the State's appeal is dismissed. Presumably, defendant would make the same assertion in light of our decision to affirm the grant of a new trial. In either event, we disagree with defendant and believe that *Davis* is distinguishable from this case.

In *Davis,* this court decided to address the defendant's directed verdict issues even though it was reversing the trial court's judgment of not guilty and remanding for entry of judgment in compliance with the jury verdict. Since the court was aware that the trial court believed evidence of guilt was insufficient, it knew another appeal was inevitable on the question of the sufficiency of the evidence. Therefore, this court ruled on the defendant's directed verdict issues and found sufficient evidence to allow the case to go to the jury and support the conviction.

To the contrary, in this case the eventual review of the issues raised in defendant's cross-appeal is not inevitable. Following the issuance of mandate from this court, if a new trial is held, defendant may not be found guilty. If not tried or tried and found not guilty, he would not have to appeal the earlier denials of his motions in the first trial. Thus, another appeal raising the same issues

is not inevitable and the resulting concerns about judicial economy are not present in this case as they were in *Davis*.

As a final note, we believe our decision also finds support from *Scott v. J.C. Penney Co.*, 67 N.M. 219, 354 P.2d 147 (1960). In *Scott*, our Supreme Court held that a civil defendant could not appeal from the denial of a JNOV where the trial court had granted the defendant's motion for a new trial. According to the Supreme Court, if a defendant's motion for new trial is granted but the motion for judgment notwithstanding the verdict is denied, the case stands as never tried, and until it is retried and a judgment is rendered, there is no appealable final judgment. Consequently, we do not address the merits of defendant's cross-appeal.

For the reasons stated above, the trial court's decision to grant a new trial is affirmed.

**IT IS SO ORDERED.**

BLACK, J., concurs.

HARTZ, J., dissents.

HARTZ, Judge (concurring in part, dissenting in part).

I agree with the majority that (1) under *State v. Chavez*, 98 N.M. 682, 652 P.2d 232 (1982), the State's appeal is properly before this Court; (2) a district court may not grant a new trial on the basis that it disagrees with a uniform jury instruction; (3) evidence of Defendant's prior conviction for fraud was properly admitted at trial[1]; and (4) expert testimony was not the proper method of informing the jury of the legal definition of a security. My disagreement is with the disposition of the appeal. Having found that only one of the grounds mentioned by the district court could be a proper ground for granting a new trial, the majority nevertheless affirms

the order granting a new trial. This disposition conflicts with a proper understanding of the nature of the district court's discretion and the reason why an appellate court should defer to that discretion. I would remand to permit the district court to consider whether a new trial is required by the one trial error that the district court can properly consider.

Why do appellate courts grant trial judges discretion in determining whether trial error requires a new trial? *See State v. Gonzales*, 105 N.M. 238, 241, 731 P.2d 381, 384 (Ct.App. 1986) (trial court has discretion in granting new trial because of legal error), *cert. quashed*, 105 N.M. 211, 730 P.2d 1193 (1987). The reason is that "the trial court is in the best position to evaluate any possible prejudice." *Id.* 105 N.M. at 243, 731 P.2d at 386. As stated in Professor Rosenberg's seminal essay on judicial discretion, "a sound and proper reason for conferring a substantial measure of respect to the trial judge's ruling [is that] it is based on facts or circumstances that are critical to decision and that the record imperfectly conveys." Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L.Rev. 635, 664 (1971) (emphasis deleted). Some trial errors compel reversal on appeal. Other errors, although not of that magnitude, nonetheless may appear to the trial judge as having caused an unfair trial. *See Gonzales*, 105 N.M. at 241, 731 P.2d at 384. Recognizing that presence at the trial gives the trial judge a superior vantage to the appellate court in gauging the impact of the error on the jury, an appellate court will defer to the trial judge's conclusion that the error caused substantial prejudice.

When an appellate court states that it is deferring to the trial judge's exercise of discretion, the appellate court means that, based on the record, it would affirm an order

---

1. As for the impact of the evidence of Defendant's conviction on the charges against Defendant other than fraud, I agree with the majority that Defendant has not preserved an objection to the evidence on this ground. Also, in granting a new trial the district court did not refer specifically to the impact of the evidence of the prior conviction on the non-fraud charges against Defendant. Moreover, because Defendant testified at trial, evidence of the prior conviction was admissible to impeach his credibility. *See* SCRA 1986, 11–609. Thus, the prior conviction was not only admissible in the State's case-in-chief because of its relevance to the fraud charges, it was also admissible later on (during or after cross-examination of Defendant) with respect to all charges. This is an additional reason why the order granting a new trial could not be based on admission of evidence of Defendant's prior conviction.

either way. For example, the appellate court would affirm the trial judge's ruling on a motion for a new trial if the motion was granted or if it was denied. The critical factor is the trial judge's actual view of the matter. An order granting a new trial is never *reversed* simply because it would have been within the trial judge's discretion to deny a motion for a new trial. The appellate court does not affirm because of what a hypothetical trial judge could have thought; it affirms on the basis of what the real trial judge actually thought. Thus, if the trial judge enters an order without exercising discretion because of the mistaken view that the law compelled the issuance of the order, the appellate court will remand to permit the exercise of discretion even though it would have affirmed the identical order as a proper exercise of discretion if the trial judge had in fact exercised discretion. *See Mills v. Southwest Builders*, 70 N.M. 407, 418, 374 P.2d 289, 296 (1962) (remanding so trial court could reconsider whether costs should be awarded after trial court erroneously ruled that it had no authority to award costs of aborted first trial to party that prevailed at second trial); *Catron v. Rueckhaus*, 107 N.M. 227, 755 P.2d 71 (Ct.App.1988) (reversing when trial court erroneously believed it had no discretion in awarding fee for estate's personal representative); *Maus v. State*, 311 Md. 85, 532 A.2d 1066, 1077 (1987); *Lemons v. Old Hickory Council, Boy Scouts of Am.*, 322 N.C. 271, 367 S.E.2d 655, 658 (1988).

What if the trial judge makes a discretionary ruling based on several factors but it was improper to consider some of those factors? If the remaining factors could still justify the same ruling, the ruling may be affirmable—but only if the trial judge actually decides that the remaining grounds justify the ruling. The appellate court should not affirm simply because the remaining grounds *could* justify the ruling. After all, the purpose of deferring to the trial judge is that the trial judge is in a better position to weigh the various considerations pertinent to the matter at issue. For the appellate court to affirm without knowing how the trial judge would rule on the remaining factors is to substitute a hypothetical trial judge for the real judge to whom the appellate court should pay defer-

ence. It would be bullheaded to affirm under an abuse-of-discretion standard when the trial judge would rule the other way if informed that certain factors should not be considered.

The United States Supreme Court recognized this proposition in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964). The district court had enumerated ten factors in denying a motion for a change of venue. One of the factors was not an appropriate criterion. The Supreme Court, noting that the district court was exercising a discretionary function, reversed and remanded for reconsideration without reference to the improper factor. *See* Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 752–53 n. 19 (1982) (In reviewing exercise of discretion to dismiss on the ground of forum non conveniens, "[o]ne cannot simply assume that the district court would still opt to dismiss [on that ground] if a principle [sic] reason for the dismissal had disappeared.").

The New Mexico Supreme Court has also adopted this view. In *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), the trial judge based an enhanced sentence on two aggravating circumstances. The Supreme Court held that one of the circumstances was an improper consideration. The Court then wrote, "Because we do not know the relative weights the trial judge attached to [the two considerations], we remand for resentencing[.]" *Id.* at 17 n. 11, 810 P.2d at 1237 n. 11. This Court issued an identical order in *State v. Watchman*, 111 N.M. 727, 734, 809 P.2d 641, 648 (Ct.App.), *cert. denied*, 111 N.M. 529, 807 P.2d 227 (1991).

This is not to say that an appellate court should never affirm a new-trial order when the trial judge noted an improper factor in reaching a decision. For example, if one of the grounds for granting a new trial was an error which constitutes reversible error, the order granting a new trial should be affirmed. After all, if the trial judge had not granted a new trial, the appellate court would find reversible error and order one anyway. The denial of a new trial would have been an abuse of discretion; or, more

accurately, the trial judge did not really have discretion to deny a new trial. Also, if the record makes apparent that the trial judge would grant a new trial on any one of several alternative grounds, then the appellate court should affirm if any of those grounds was a proper one for the trial judge to consider. These two reasons for affirmance may account for statements by several courts that an order granting a new trial will be affirmed if any cited ground would support the order. *See, e.g., Commercial Nat'l Bank v. Missouri Pac. R.R.*, 631 F.2d 563, 565 (8th Cir.1980); *Tramell v. McDonnell Douglas Corp.*, 163 Cal.App.3d 157, 209 Cal.Rptr. 427, 437 (1984); *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 449 (Mo. 1980) (en banc).

Turning to this case, the only appropriate ground for a new trial that the district court mentioned was the improper admission of expert testimony defining a security. The majority does not say that the error in admitting the testimony was reversible error. I do not think that it was; the prosecution witness properly defined the term, and misstatement of the law by Defendant's own expert witnesses is hardly a proper ground for reversal. Thus, affirmance is possible only if the district court found, in the exercise of its discretion, that this particular error in itself created sufficient prejudice to require a new trial. The record does not establish that the district court so found. I quote the pertinent statements by the district court. (The district court said that the transcript of the proceeding would constitute its findings and conclusions.):

THE COURT: Okay. I am convinced that, after reading a very recent supreme court case, that the *Howey* definition of securities is still the law in New Mexico. And I am convinced, because of that, that my jury instruction to the jury in this case was erroneous, even though it did comply with the uniform jury instructions.

Last night, I thought about this case all night. This is—very seldom do I have a hard time sleeping because I can't get a case or my job out of my mind. Usually, I make a decision and just go on about my business. I thought about this case all night and some things came to mind. One is that I was convinced that the law in New Mexico was as proposed by the state. And I think the state, in good faith, proposed that instruction.

Obviously, since stating, again, that the uniform jury instruction stated that the standard for a securities—to the one issue, that it be primarily from the work or efforts of others and the *Howey* case stated that it had to be totally—why that is important to me is that this case was somewhat a battle of experts as to definitions and as to what made both a security and a commodity. I allowed both parties to present evidence and experts, basically telling the jury what they thought the law was. I'm not sure, on second thought, that that's an appropriate way for this case to have proceeded.

If this case were to go on appeal, I think that would be found to be harmless error, because there was no objection from either side. But, what it does in this case is, when I gave the jury an instruction which went along specifically with the state's proposed instruction and what the state's experts said the law was, that gave the state's expert a standard of credibility much more than the defendant's.

Basically, the Court is saying that they agreed with the state's experts, therefore, the state's expert was right on everything. And I think that is error. I also am convinced that I made error in allowing Mr. Danek's conviction to come in in this Court. I don't think I should have done that and, under the circumstances, I think that was also error.

I don't believe that the severance was error. I think that—in hindsight, obviously—if the—I think it helped the trial to the issues of the case and did away with problems, which are called "*Bruton*" problems. I think it was *U.S. v. Bruton*. I'm not sure. It's a federal case, stating that the standard of having one person's admissions to be used against either co-defendant or co-conspirator, without an exception to the hearsay rule, somehow would be reversible error. That did away with all those problems and I think it was an appropriate way to handle the case.

This is the first time I've done this in my many years as a judge. Under the circumstances, I find that the defendant's motion for a new trial is appropriate and should be granted. And, as my only ruling here today—and I'm not going to address anything else. I obviously foresee an appeal, as to that ruling, by the state. When that is done, we'll address all other issues that have been raised by both parties. Thank you.

PROSECUTOR: ... And I note that part of your reasons for granting the new trial was that you felt that the instruction on the test was erroneous.

THE COURT: Yes.

. . . .

THE COURT: It's the totality of the circumstances that I feel that I made erroneous rulings in this case; and, because of that, I feel the defendant didn't get a fair trial.

Perhaps the district court would grant a new trial based solely on the error in admitting expert testimony. The only way to know is to remand. On remand the district court should "spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision." Rosenberg, *supra*, at 665–66; *see State v. Ferguson*, 111 N.M. 191, 197, 803 P.2d 676, 682 (Ct.App.) (Hartz, J., dissenting), *cert. denied*, 111 N.M. 144, 802 P.2d 1290 (1990). Although I question whether the error regarding expert testimony can justify a new trial, the district court's reasoning, should it order a new trial, could be persuasive.